**BERRY LAW PLLC**
745 Fifth Avenue, 5th Floor
New York, New York 10151
Phone: (212) 355-0777
Eric W. Berry
berrylawpllc@gmail.com

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
mbrownstein@tarterkrinsky.com

*Attorneys for defendants Jonathan A. Stein*
  *and Shalom Maidenbaum*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

---------------------------------------------------------X

*In re* AARON FISCHMAN, LLC,

                       Debtor,

Case No. 23-36038 (CGM)

---------------------------------------------------------X

YOEL WEISSHAUS,

                    Plaintiff,

  - against -

Adversary Proceeding 23-09024 (CGM)

JONATHAN A. STEIN, and SHALOM
MAIDENBAUM, in his individual and official
capacity on behalf of CARDIS ENTERPRISES
INTERNATIONAL B.V. and CARDIS
ENTERPRISES INTERNATIONAL N.V. and
CARDIS ENTERPRISES INTERNATIONAL
(USA), INC.,

                Creditors-Defendants,

  - and -

AARON FISCHMAN**,**

               Nominal Defendant.

**Answer, Affirmative Defenses,**
 **Counterclaim and Cross-claim**

---------------------------------------------------------X

Defendants Jonathan A. Stein and Shalom S. Maidenbaum, solely in his individual

capacity, by their undersigned attorneys, for their Answer and Affirmative Defenses, and Maidenbaum, for his Counterclaim and Cross-Claim, allege as follows:

<u>**ANSWER**</u>

1.  Plaintiff is a creditor of Aaron Fischman, the Debtor ("Debtor"), with an unsecured claim of $64,515.

**<u>Response:</u>**    Deny that Weisshaus is a bona fide, legitimate or arms-length creditor of Fischman.

2.  At all relevant times, the Debtor is domiciled in Sullivan County.

**<u>Response:</u>**    Deny.

3.  At all relevant times, Cardis Enterprises International B.V. and Cardis Enterprises International N.V. were located in the Netherlands, Canada, and Israel ("Cardis").

**<u>Response:</u>**    Deny.

4.  At all relevant times, Cardis Enterprises International (USA), INC. ("Cardis USA") was addressed in Nassau County, a corporation created by Defendant Maidenbaum and by Defendant Stein, naming the Debtor as its CEO and registered agent.

**<u>Response:</u>**    Deny.

5.  At all relevant times, Cardis was a startup company that developed software of credit card processing technology based on several patents it had registered with the United States Patent and Trademark Office.

**<u>Response:</u>**    Deny information and belief sufficient to answer to the allegation.

6.  Utilizing a series of four confessions of judgment, Defendant Maidenbaum in his individual capacity and Jonathon Stein usurped Cardis from its shareholders and using a series of

judgments against the Debtor, making it impossible for any creditor to conduct any business with the Debtor or creating a payment plan for any debt.

**Response:**   Deny.

7.   In particular, at least three (3) out of the five (5) creditors listed in the petition of this action have a consensus that the Debtor and valid creditors can successfully reach a reorganization of the Debtor's finances if the claims presented herein are determined by the Court.

**Response:**   Deny.

8.   Jurisdiction is proper as Plaintiff, a Creditor, seeks a core determination pursuant to 28 USC 157(2)(B) as to whether to allow the claims of Defendants to hamper the creditors from achieving a consensual reorganization of the Debtor's estate.

**Response:**   Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

9.   Jurisdiction is proper as Plaintiff, a Creditor, seeks a core determination pursuant to 28 USC 157(2)(H) to determine the claims of Defendants as arising from a fraudulent conveyance of confessions of judgment that were never funded.

**Response:**   Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

10.   Venue is proper as Plaintiff, a Creditor, seeks a core determination pursuant to 28 USC 157(2)(E) and (H) to account and turn over property of the Debtor to the estate, in which Defendant has levied and not recorded a reduction of debt to the Debtor.

**Response:**   Neither admit nor deny since the allegation consists solely of legal

conclusions for which no answer is required.

11.    Jurisdiction is proper as Plaintiff, a Creditor, seeks a core determination pursuant to 28 USC 157(2)(K) to reject the validity of certain claims and liens that Defendants have against the Debtor's Estate.

**Response:**   Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

12.    Jurisdiction is proper pursuant to 28 USC 1334 as Plaintiff, a Creditor, seeks relief from the Court to extent that the Court will abstain from deciding the claims presented in this adversary action, to grant relief to Plaintiff to pursue all remedies available to Plaintiff in State forum to obtain a full determination of all the claims presented in this adversary action.

**Response:**   Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

13.    Venue is proper as this proceeding is present in the District in which the Debtor is domiciled.

**Response:**  Deny

14.    The Defendants claim to have four confessions of judgment against the Debtor, which are contested:

a. A confession of judgment in the principal amount of $275,000 ("$275k judgment") *Shalom S. Maidenbaum, v. Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), INC., Choshen Israel LLC, Aaron Fischman*, Supreme Court of Nassau County, Index No. 604766/2016 (currently assigned to Hon. Danielle Peterson)

4

b. A confession of judgment in the principal amount of $2,000,000 ("$2-million judgment") *Shalom S. Maidenbaum, v. Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), INC., Choshen Israel LLC, Aaron Fischman*, Supreme Court of Nassau County, Index No. 604610/2016 (currently assigned to Hon. Bruce Cozzens).

c. A confession of judgment in the principal amount of $250,000 ("$250k judgment") *Shalom S. Maidenbaum, v. Aaron Fischman,* Index No. 604767/2016 (currently not assigned to any judge).

d. A confession of judgment in the principal amount of $50,000 ("$50k judgment") *Shalom S. Maidenbaum, v. Aaron Fischman,* Index No. 604768/2016 (currently not assigned to any judge)

**Response:**    Deny that the judgments are contested.

15.    There are presently pending two separate actions in the State forum seeking to declare these confessions of judgment as void *ab initio*. These actions are:

a. A counterclaim by Nina Fischman in the action captioned as *Shalom S. Maidenbaum v. Nina Fischman, Mommy Sauce Irrevocable Trust, Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc., Choshen Israel LLC, Aaron Fischman, Merrill Lynch Pierce Fenner & Smith Incorporated, Bank Of America, N.A., TD Bank, N.A. and M&T Bank Corp.*, Index No. 601538/2021 (assigned to the Hon. Danielle Peterson). A motion for default judgment (Seq. 7) by Nina Fischman is currently fully submitted, which seeks to declare the $275k and $2-million judgments as null and void.

b. A plenary action by the Debtor captioned as, *Aaron Fischman and Choshen Israel Group, LLC, Jonathan A. Stein, and Shalom Maidenbaum in his individual and official capacity on behalf of Cardis Enterprises International B.V. and cardis enterprises international N.V. and Cardis Enterprises International (USA), Inc.* Index No. 608120/2022 (assigned to the Hon.

Danielle Peterson), which is a declaratory judgment action by the judgment Debtor seeking to declare the judgments by Defendants as null and void.

**Response:**     Admit that there are proceedings which the above referenced index numbers have been assigned; assert that the allegations made by Mr. and Mrs. Fischman in those proceedings are incomprehensible; and deny that the confessions of judgments that Mr. Fischman voluntarily signed are neither null nor void.

16.   Due to the Honorable Justice Peterson having been away for over one year due to cancer, a decision on the validity of judgments was delayed, and the Defendants took advantage of this unfortunate situation of Justice Peterson to persist with enforcement of judgments and garnishing any money and assets of the Debtor, leaving creditors like Plaintiff with no other viability but to bring the matter before this Court and secure the property of the Debtor for the benefit of all creditors.

**Response:**   Deny.

17.  On May 4, 2015, the Debtor purportedly signed a confession of judgment stating, "This confession of judgment is for a debt justly due to the plaintiff Shalom S. Maidenbaum, arising from a promissory note (the "Note") executed by Cardis BV, Cardis NV, Cardis USA and Choshen on February 23, 2015 and personally guaranteed by me on the same date, with interest

at an annual percentage rate of eight percent (8% )." The confession also states "Accordingly, we hereby confess judgment, jointly and severally, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) with interest at the rate of twelve percent (8%) from February 23, 2015 to and including April 30, 2015, and thereafter, at the rate of twenty-four percent (24%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full." Attached as **Exhibit C** is a true copy of the confession of $275k judgment.

**Response:** Deny that the signature is purported; and therefore deny.

18.  The confession of $275k judgment bears the notary signature of the Defendant Jonathon Stein ("Stein").

**Response:** Admit.

19.  Absent from the confession of the $275k judgment are the specific facts of its purported promissory note, such as the amount of the promissory note, and any indicia of the nature of the debt of the promissory note (*i.e.,* a loan of money, compensation for goods or services, the nature of the guarantee, or etc.).

**Response:** Deny.

20.  On June 23, 2016, Defendant Stein filed for Defendant Maidenbaum the confession of the $275k judgment.

**Response:** Admit.

21.  On June 28, 2016, the Clerk of the Court for Nassau County entered judgment in the amount of $355,542,98. Attached as **Exhibit D** is a true copy of the $275k judgment.

**Response:**   Admit.

22.   On May 4, 2015, the Debtor purportedly signed a second-identical confession of judgment stating, "This confession of judgment is for a debt justly due to the plaintiff Shalom S. Maidenbaum, arising from a promissory note (the "Note") executed by Cardis BV, Cardis NV, Cardis USA and Choshen on February 23, 2015 and personally guaranteed by me on the same date, with interest at an annual percentage rate of eight percent (8% )." The confession also states "Accordingly, we hereby confess judgment, jointly and severally, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Million Dollars ($2,000,000.00) with interest at the rate of twelve percent (8%) from February 23, 2015 to and including April 30, 2015, and thereafter, at the rate of twenty-four percent (24%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full." Attached as **Exhibit E** is a true copy of the confession of $2 million judgment.

**Response:**   Deny that the signature was purported or that the confession of judgment was identical to another, and therefore deny.

23.   This $2-million confession of judgment also bears the notary signature of the Defendant Stein.

**Response:**   Admit

24.   Absent from the confession of the $2-million judgment are the specific facts of its purported promissory note, such as the amount of the promissory note, and any indicia of the nature of the debt of the promissory note (i.e., a loan of money, compensation for goods or services, the nature of the guarantee, or etc.).

**Response:** Deny.

25. On June 21, 2016, Defendant Stein registered for Defendant Maidenbaum the confession of the $2 million judgment. The action is captioned as *Shalom S. Maidenbaum, v. Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), INC., Choshen Israel LLC, Aaron Fischman,* Index No. 604610/2016.

**Response:** Deny, since Stein did not register the confession of judgment, and instead filed it in the Nassau County Clerk's office.

26. On June 21, 2016, the Clerk of the Court for Nassau County entered judgment in the amount of $2,576,442,78. Attached as **Exhibit F** is a true copy of the $2 million judgment.

**Response:** Admit

27. On December 24, 2015, the Debtor purportedly signed a third-identical confession of judgment stating, "This confession of judgment is for a debt justly due to the plaintiff Shalom S. Maidenbaum, arising from a promissory note (the "Note") executed by me on May 4, 2015, with interest at an annual percentage rate of eight percent (8%)." The confession also states "Accordingly, I hereby confess judgment, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) with interest at the rate of eight percent (8%) from June 19, 2015 to and including September 30, 2015, and thereafter, at the rate of sixteen percent (16%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full." Attached as **Exhibit G** is a true copy of the confession of $250k judgment.

**Response:**   Deny that the signature was purported or that the confession of judgment was identical to another, and therefore deny.

28.   The confession of the $250k judgment also bears the notary signature of the Defendant Stein.

**Response:**   Admit.

29.   Absent from the confession of the $250k judgment are the specific facts of its purported promissory note, such as the amount of the promissory note, and any indicia of the nature of the debt of the promissory note (*i.e.*, a loan of money, compensation for goods or services, the nature of the guarantee, or *etc.*)

**Response:**   Deny.

30.   On June 24, 2016, Defendant Stein registered for Defendant Maidenbaum the confession of the $250k judgment. The action is captioned as *Shalom S. Maidenbaum, v. Aaron Fischman,* Index No. 604767/2016. Attached as **Exhibit H** is a true copy of the $250k judgment.

**Response:**   Deny, since Stein did not register the confession of judgment, and instead filed it in the Nassau County Clerk's office.

31.   On June 28, 2016, the Clerk of the Court for Nassau County entered judgment in the amount of $285,500.17.

**Response:**   Admit.

32.   On December 24, 2015, the Debtor purportedly signed a fourth-identical confession of judgment stating, "This confession of judgment is for a debt justly due to the plaintiff Shalom S. Maidenbaum, arising from a promissory note (the "Note") executed by me on May 4, 2015, with interest at an annual percentage rate of eight percent (8%)." The confession also states

"Accordingly, I hereby confess judgment, pursuant to CPLR § 3218, in favor of Shalom S. Maidenbaum in the sum of Two Hundred Fifty Thousand Dollars ($50,000.00) with interest at the rate of eight percent (8%) from June 19, 2015 to and including September 30, 2015, and thereafter, at the rate of sixteen percent (16%), until such time as judgment is entered, and thereafter, at the statutory rate of nine percent (9%) until such time as the entire obligation is paid in full." Attached as **Exhibit I** is a true copy of the confession of $50k judgment.

    <u>**Response:**</u>   Deny that the signature was purported or that the confession of judgment was identical to another, and therefore deny.

    33.   The confession of the $50k judgment also bears the notary signature of the Defendant Stein.

    <u>**Response:**</u>   Admit

    34.   Absent from the confession of the $50k judgment are the specific facts of its purported promissory note, such as the amount of the promissory note, and any indicia of the nature of the debt of the promissory note (*i.e.,* a loan of money, compensation for goods or services, the nature of the guarantee, or etc.)

    <u>**Response:**</u>   Deny.

    35.   On June 24, 2016, Defendant Stein registered for Defendant Maidenbaum the confession of the $50k judgment. The action is captioned as *Shalom S. Maidenbaum, v. Aaron Fischman*, Index No. 604768/2016.

    <u>**Response:**</u>   Deny, since Stein did not register the confession of judgment, and instead filed it in the Nassau County Clerk's office.

    36.   On June 28, 2016, the Clerk of the Court of Nassau County entered judgment in the

amount of $57,054.85. Attached as **Exhibit J** is a true copy of the $50k judgment.

**Response:**   Admit.

37.   On March 13, 2023, Defendant Stein, on behalf of Defendant Maidenbaum, brought a motion to register a non-final judgment of attorney fees incurred in the State of Israel in the amount of $185,443.70. The action is captioned as *Shalom S. Maidenbaum, v. Aaron Fischman*, Supreme Court of Sullivan County, Index No. E2023-395. Attached as **Exhibit K** is a true copy of the motion.

**Response:**   Deny that the judgment was non final, and therefore deny.

38.   The aforementioned confessions of judgment were filed without any attachment of a promissory note or agreement creating the purported debts.

**Response:**   Assert that the allegation is incoherent, and therefore deny.

39.   In post judgments filings scattered across several courts, there were filings made by the Debtor that illuminate a partnership between Defendant Stein and Defendant Maidenbaum.

**Response:**   Assert that the allegation is incoherent, and therefore deny.

40.   An "Agreement" combined with a "Promissory Note," each dated December 8, 2010 (referred to as the "2010 Agreement and Promissory Note" or "2010 Agreement" or "2010 Promissory Note"), purport as follows:

a. Defendant Stein and Defendant Maidenbaum are 50% partners in the interests they claim to hold in Cardis.

b. In the 2010 Agreement, Defendant Stein and Defendant Maidenbaum claim to have loaned $650,000 to Cardis.

c. In the 2010 Promissory Note, Defendant Stein and Defendant Maidenbaum claim to

have loaned $775,000 to Debtor.

d. In the 2010 Agreement and Promissory Note, Defendants that the Debtor is a personal guarantor to such obligations.

e. In the 2010 Agreement, Defendant Stein and Defendant Maidenbaum demand that the Debtor guarantee to them a 12.5% shareholder lead in Cardis.

f. Attached as **Exhibit L** is a true copy of the 2010 Agreement and Promissory Note.

**Response:**   Deny since defendants' agreement was with Cardis and Choshen, and Fischman signed it the agreement on behalf of Cardis and Choshen; further assert that the allegation is incoherent, and therefore deny.

41.   An "Agreement" dated February 28, 2011 (referred to as "2011 Agreement") purport as follows:

a. Defendant Stein and Defendant Maidenbaum are equal partners in the stocks and warrants in Cardis.

b. In the 2011 Agreement, Defendant Stein and Defendant Maidenbaum claim to have loaned $740,000 to Cardis.

c. The 2011 Agreement represents that the Debtor is a personal guarantor of such obligations.

d. In the 2011 Agreement, Defendant Stein and Defendant Maidenbaum demand that the Debtor guarantee them that they maintain a 12.5% shareholder lead in Cardis.

e. Attached as **Exhibit M** is a true copy of the 2011 Agreement.

**Response:**   Deny since defendants' agreement was with Cardis and Choshen, and Fischman signed the agreement on behalf of Cardis and Choshen; further assert that the

allegation is incoherent, and therefore deny.

42.    In subsequent filings, Defendants represented that the promissory notes for each of the confessions of judgment are rooted in the 2010 Agreement and Promissory Note and the 2011 Agreement.

**Response:**    Deny, and in particular deny that defendants have ever used the term "rooted" in a "filing"; otherwise deny as incomprehensible.

43.    In a promissory note for $250,000, dated May 4, 2015, between the Debtor and Defendant Maidenbaum, Defendant Stein and Defendant Maidenbaum are listed as "founders" of Cardis, each pledging "founders stock" to themselves. Attached as **Exhibit W** is a true copy of the promissory note.

**Response:**    Deny, and assert that the term "Founders' stock" denominates stock deemed to be the property of the individuals or entities that form a corporation.

44.    As stated above, each of the confessions of judgment do not state the facts purporting the amount and the nature of each of the promissory notes supporting such judgment.

**Response:**    Deny.

45.    On May 16, 2018, Defendant Maidenbaum filed a RICO Action[1] against the Debtor claiming that Cardis was a racketeering enterprise. In the original complaint, Defendant Maidenbaum alleged that "From on or about June 18, 2009 to on or about September 10, 2015 Plaintiff [Maidenbuam] deposited sums of money in excess of $3,000,000 into the aforesaid attorney escrow accounts for the sole purpose of investing into various business ventures of Aaron Fischman." The RICO action is captioned as *Shalom S. Maidenbaum v. Aaron Fischman; Nina Fischman; Lawrence Katz; The Law Office of Lawrence Katz, PC; The Law Office of*

14

*Lawrence Katz, Esq., PLLC; and Choshen Israel Group, LLC. USDC Eastern District of New York*, docket no. 18-CV-2911 (NGG) (RER). Attached as **Exhibit N** is a true copy of the original complaint in the RICO action.

> **Response:**   Admit.

46.   On June 14, 2019, Defendant Maidenbaum filed a proposed amended complaint in the RICO action, stating that "Between in or about 2006 and September 20 I 5 Mr. Maidenbaum tendered dozens of checks to Katz for investment in either Cardis or Epoint,[3] in excess of $2,000,000.00. Many of the checks, or portions of many, were diverted by Aaron Fischman and Katz to Nina Fischman, Choshen or places unknown, other than the intended targets of investment. Upon information and belief only $625,000.00 of the $1,550,000.00 earmarked for Epoint was actually deposited into Epoint's account. None of the $850,000.00 earmarked for Cardis was deposited into Cardis's account." Attached as **Exhibit O** is a true copy of the proposed amended complaint in the RICO action.

> **Response:**   Deny, and assert that the amendment was proposed, rather than filed.

47.   On June 14, 2019, an attorney for Defendant Maidenbuam filed a deceleration in the RICO action stating "The total amount tendered by the plaintiff for investments in either Cardis or Epoint totaled $2,400,000. More specifically, $850,000 was to be invested in Cardis and $1,550,000 was to be invested in Epoint, of which only $625,000 made it to Epoint accounts. The other $925,000 was diverted by Defendants." Attached as **Exhibit P** is a true copy of the deceleration.

> **Response:**   Deny, and refer the Court to the content of the declaration cited by this allegation.

48. On September 13, 2020, Defendant Stein filed an affirmation in the action of the $2 million judgment stating, "I personally invested [in Cardis] $100,000.00 of my money with Defendant Fischman, my brother invested $125,000.00, my mother invested $150,000,00 and various friends and relatives invested hundreds of thousands of additional dollars." Notably, at the same time while besmearing the Cardis venture, Defendant Stein does not disclose that he was a founder of Cardis. Attached as **Exhibit Q** is a true copy of the affirmation.

**Response:**   Deny.

49. On February 8, 2021, Defendant Maidenbaum filed a verified petition for a turnover proceeding stating "Maidenbaum obtained promissory notes, guaranties and confession of judgments, rather than investment securities, in exchange for the funding he provided." The turnover proceeding is captioned as *Shalom S. Maidenbaum, v. Nina Fischman, Mommy Sauce Irrevocable Trust, Cardis Enterprises International, B.V., Cardis Enterprises International, N.V., Cardis Enterprises International (USA), Inc., Choshen Israel LLC, Aaron Fischman, Merrill Lynch Pierce Fenner & Smith Incorporated, Bank Of America, N.A., TD Bank, N.A. and M&T Bank Corp.*, Supreme Court of Nassau County, Index no. 601538/2021. Therein, Defendant Maidenbaum alleges that a total of "$2,194,170 received into Katz's HSBC IOLA Account were proceeds Maidenbaum's loans." Attached as **Exhibit R** is a true copy of the petition.

**Response:**   Deny, assert that the quoted statements were among many allegations in the petition, and refer to the Court the actual petition for its contents.

50. Attached to the turnover petition, Defendant Maidenbaum submitted an exhibit purporting to show that Defendant Maidenbaum advanced "$2,488,000" as loans/investments in

Cardis. Attached as **Exhibit S** is a true copy of such exhibit created by Defendant Maidenbaum.

**Response:** Deny, assert that the quoted statement was among many allegations in the petition, and refer to the Court the actual petition for its contents.

51. On June 10, 2022, Defendant Maidenbaum filed an amended petition in the turnover proceeding stating, "On February 23, 2015, Cardis, Choshen and Aaron Fischman executed and delivered two separate promissory notes. One of these notes." "Maidenbaum evidenced a total debt of $2 million and replaced prior notes that (a) Maidenbaum funded in amounts totaling $1.625 million, and (b) also entitled Maidenbaum to $1,314,614 in accrued interest." "('This Note shall supercede [*sic*] all prior Notes, other than a Note of even date covering a separate obligation by Payor in the principal sum of Two Hundred Seventy-Five Thousand Dollars')." "Thus, Cardis received substantial consideration consisting of an extension of the maturity date (forbearance of the right to sue), and forgiveness of $949,614 in interest. The other note executed and delivered on February 23, 2015 ..., which was in the amount of $275,000.00, evidenced the obligation to repay loans that, as the note recited, Maidenbaum made in the amounts of $100,000 on October 7, 2014, another $100,000 on November 7, 2014 and $75,000 on February 23, 2015 ... Consideration exists for the $275,000 note since it was executed simultaneously with an additional $75,000 in funding from Maidenbaum. Neither note was paid at maturity or thereafter. Judgments by confession were jointly and severally against Cardis, Choshen and Aaron Fischman in the amount of $2,576,442.78 on June 21, 2016 and $355,542.98 on June 28, 2016."

**Response:** Deny, assert that the quoted statements were among many allegations in the amended petition, and refer to the Court the petition for its actual contents.

52. On September 8, 2023, Defendant Maidenbaum filed a motion to dismiss the

Chapter 11 of Choshen Group Israel LLC, docket number 23-35636(CGM) stating, "Maidenbaum provided ample consideration in exchange for these promissory notes. The consideration for the $2 million note was loans totaling $1,350,000 made years earlier to Cardis (and large outstanding interest payments), and novated in 2015. The consideration for the $275,000 note was new loans to Cardis totaling $275,000." "Maidenbaum was a substantial, though overly trusting, source of funds for Cardis. In addition to the loans underlying the judgments, Maidenbaum also made equity investments in Cardis totaling f [sic] $2,381,000. The checks for all the funds that Maidenbaum provided Cardis—both as loans and as equity—are annexed as Exhibit 8 and a spreadsheet summarizing all the loans and the equity investments is annexed as Exhibit 9." Attached as **Exhibit U** is a true copy of the motion to dismiss.

**Response:** Deny, assert that the quoted statements were among many statements in the motion, and refer the Court to the motion for its actual contents.

53. On December 18, 2023, Defendant Maidenbuam filed a sur reply in the turnover proceeding stating that "On December 8, 2016 Maidenbaum and Fischman, acting on behalf of Choshen and Cardis, entered into a written agreement … that designated $775,000 of the $1,625,000 in advances that Maidenbaum provided as 'loans to Cardis,' and the remaining $850,000 as for 'direct stock purchases from Choshen of Cardis' stock'—i.e., equity." Attached as **Exhibit V** is a true copy of the sur reply filed by Defendant Maidenbaum.

**Response:** Deny, assert that the quoted statement was among many in an attorneys affirmation, and refer to the Court the affirmation for its actual contents.

54. Plaintiff is a Creditor with a claim of $64,515.

**Response:** Deny that Weisshaus is a bona fide, legitimate or arms-length creditor of

Fischman.

55.     "It appears that every court that has addressed this issue has found that a confession of judgment is a judicial lien." *In re Higgins*, 270 BR 147, 154 [Bankr SDNY 2001]. This affects the Plaintiff as an unsecured creditor since Defendant Maidenbaum has attached the $2 million judgment, the $275k judgment, the $250k judgment and the $50k judgment as a secured lien on any property in which the Debtor has an alleged interest. This includes a residential property of the Debtor in Nassau County ($1,000,000+), a residential property of the Debtor in Sullivan County ($500,000+), and a residential condominium in Tel Aviv of the State of Israel ($4,000,000+). Upon information and belief, the value of these three properties combined fall short of allowing unsecured creditors from obtaining a share in the equity, thus reducing Debtors chances of having Plaintiff's claims satisfied.

**Response:**     Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

56.     Pursuant to CPLR 5015(a), an "interested party" has standing to move to vacate a judgment based on a confession of judgment. "The strict requirements for entry of a judgment by confession [pursuant to CPLR 3218] are intended for the protection of third persons, notably other creditors of the debtor who might be prejudiced by a collusively confessed judgment, rather than for the debtor." *Gold v Comm. on Professional Standards, Third Jud. Dept*., 85 AD2d 776, 777 [3d Dept 1981]. As such, Plaintiff as a third-party creditor has standing to scrutinize a confession of judgment that was entered pursuant to CPLR 3218.

**Response:**     Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

57.    In the context of bankruptcy, each creditor is in a position of an interested party, since a bankruptcy is conclusive on a Debtor's liabilities and a creditor's inaction has the preclusive effect of barring the creditor from ever recovering from the Debtor.

**Response:**    Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

58.    In particular, Plaintiff has standing as a creditor, since the disallowance of claims by Defendants has the chances of improving the Debtor's chances of reorganizing itself, especially since the Defendants claims are hampering the Debtor's reorganization and rehabilitation.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

**Responding to the First Claim for Relief (requesting a Declaratory Judgment):**

59.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth at length herein.

**Response:**    Defendants incorporate by reference the responses to paragraphs 1-58.

60.    "The right to enter judgment, based upon a statement of confession, is derived from the statute and is dependent upon strict compliance with the pertinent statutory provisions. The courts have made it plain that the requirement that the affidavit state the facts underlying the obligation is designed for the protection of third persons who might be prejudiced in the event that a collusively confessed judgment is entered, rather than for the protection of the defendant." County Nat. Bank v Vogt, 28 AD2d 793, 794 [3d Dept 1967], *affd sub nom.* 21 NY2d 800 [1968].   The "formal objection to the statement should be distinguished from the question whether the transaction was bona fide. A junior judgment creditor, mortgagee or purchaser for

value without knowledge of the judgment may vacate the confessed judgment if the affidavit is formally insufficient, whether or not the transaction was in fact bona fide." *Id*.

**Response:**  Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

61.  "The statement of confession here is clearly insufficient since no information is given as to the amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount confessed is principal or interest." *Id*.

**Response:**  Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

62.  All the confessions of judgment registered as judgments by Defendants do not state concisely the nature of the debt, the amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount confessed is principal or interest.

**Response:**  Deny.

63.  A live controversy persists entangling the parties over who is a legitimate creditor of the Debtor.  The only leverage Defendants have in alleging to be a creditor of the Debtor are the purported judgments, all arising from confessions of judgment that fail to state concisely the nature of the debt, the amount of the loan, the date of the loan, the amount of repayment, if any, or how much of the amount confessed is principal or interest.

**Response:**  Deny.

64.  Wherefore, Plaintiff requests that the Court settle the issue once for all and decide the validity of the confessions of judgment. A decision by the Court will allow valid creditors and the Debtor to recognize.

**Response:**   Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

65.    It is time to place Defendants out of their misery all arising from their own failed ventures as cofounders of Cardis. The confessions of judgment are void ab initio as it fails to comply with the strict requirements of CPLR 3218.

**Response:**   Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

**Responding to the Second Claim for Relief (Alleging Non-Compliance with Executive Law §138)**

66.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth at length herein.

**Response:**   Defendants incorporate by reference the responses to paragraphs 1-65.

67.    Pursuant to RPAPL 301[a] "The certificate of the acknowledgment or of the proof of a conveyance, or the record, or the transcript of the record, of such a conveyance, is not conclusive, and it may be rebutted, and the effect thereof may be contested, by a party affected thereby."

**Response:**   Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

68.    Pursuant to Executive Law 138 "A notary public… who is a stockholder, director, officer or employee of a corporation may take the acknowledgment or proof of any party to a written instrument executed to or by such corporation, or administer an oath to any other stockholder, director, officer, employee or agent of such corporation, and such notary public may protest for non-acceptance or non-payment, bills of exchange, drafts, checks, notes and other

22

negotiable instruments owned or held for collection by such corporation; but **none of the officers above named shall take the acknowledgment or proof of a written instrument by or to a corporation of which he is a stockholder**, director, officer or employee, **if such officer taking such acknowledgment or proof be a party executing such instrument**, **either individually or as representative of such corporation**, **nor shall a notary public protest any negotiable instruments owned or held for collection by such corporation**, **if such notary public be individually a party to such instrument, or have a financial interest in the subject of same**." Executive Law § 138 (emphasis added).

    **Response:**  Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

    69.  The 2010 Agreement and Promissory Note itself demonstrate that Defendant Stein is a partner with Defendant Maidenbaum in all the investments and loans that Defendant Maidenbaum has purportedly made to Cardis.

    **Response:**  Deny.

    70.  The 2011 Agreement itself demonstrate that Defendant Stein is a partner with Defendant Maidenbaum in all the investments and loans that Defendant Maidenbaum has purportedly made to Cardis.

    **Response:**  Deny.

    71.  Defendant Maidenbaum has acknowledged that the 2010 Agreement and Promissory Note and 2011 Agreement have "novated" in 2015 into the promissory notes upon which the confessions of judgment are mastered. Attached are true copies as **Exhibit W** the promissory note for $250k, **Exhibit X** of the promissory note of $2 million, **Exhibit Y** of the promissory

note for $275k, and **Exhibit Z** the promissory note for $50k (together as "2015 promissory notes").

**Response:** Assert that the allegation is incomprehensible, and therefore deny; and further assert that the 2015 promissory note is supported by valid prior consideration, including the modification of past obligations to Fischman.

72. The Debtor's signatures in each: the 2010 Agreement and Promissory Note, 2011 Agreement, the 2015 promissory notes, and the confessions of judgment were all notarized by Defendant Stein, a party to each of these instruments.

**Response:** Deny.

73. Pursuant to Executive Law 138, Defendant Stein as a partner with Defendant Maidenbaum was disqualified from notarizing in its own benefit: the 2010 Agreement and Promissory Note, 2011 Agreement, the 2015 promissory notes, and the confessions of judgment.

**Response:** Deny, and further assert that the allegation consists solely of legal conclusions for which no answer is required.

74. A notary's "interest in the transaction … rendered [the affidavit] null and void because he had a 'direct and pecuniary interest' in the case." *Alfieri v Guild Times Pension Plan*, 446 F Supp 2d 99, 111-12 [EDNY 2006].

**Response:** Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

75. Defendant Stein as a partner with Defendant Maidenbaum in the purported debt of the Debtor rendered the confessions of judgment as null and void.

**Response:** Deny.

76. Pursuant to CPLR 3218[a], a confession of judgment is only valid if it is based "upon an affidavit executed by the defendant."

**Response:** Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

77. Here, the fact that Defendant Stein, who is a partner to the confessions of judgment, notarized the affidavits of the confessions, rendered the confessions as void ab initio.

**Response:** Deny.

78. "Accordingly, for parties to execute a Confession of Judgment, they must first state in an affidavit, signed by the defendant before a notary administering the oath, … the sum for which judgment may be entered, authorize the entry of judgment, and state the county where the defendant resides or if he is a non-resident, the county in which entry is authorized." *In re Thiessen*, 606 F Supp 3d 65, 69 [SDNY 2022].

**Response:** Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

79. Without an affidavit, the Defendants have no confession, and their entire series of confessions of judgment are void ab initio.

**Response:** Assert that the allegation is incoherent, that the documents at issue are affidavits sworn to by Fischman, and that the judgments by confession entered in Maidenbaum's favor are valid, and therefore deny.

80. A live controversy persists entangling the parties over who is a legitimate creditor of the Debtor. The only leverage Defendants have in alleging to be a creditor of the Debtor are the purported judgments, all arising from confessions of judgment that were not notarized by a

disinterested party to the instrument.

**Response:**   Assert the allegations consists solely of legal conclusions for which no answer is required, and therefore deny.

81.   "Rather, those affidavits constituted evidence admitted in judicial proceedings to prove that the signatures collected were valid. Since the candidate was an interested party both in the outcome of the proceedings and on the issue of whether she acted properly in notarizing the affidavits in question, those affidavits were nullities." *Braunfotel v Feiden*, 172 AD3d 1451, 1453 [2d Dept 2019].

**Response:**    Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

82.   Wherefore, Plaintiff requests that the Court settle the issue once for all and decide the validity of the confessions of judgment. A decision by the Court will allow valid creditors and the Debtor to recognize.

**Response:**    Assert the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

83.   Defendants have no verifiable claim, but judgments based on confessions that were in essence confessed, not before a notary, but to the judgment creditor himself. That is not a voluntary confession but more akin to an extortion.

**Response:**   Assert the allegations are incomprehensible, and therefore deny.

**Responding to the Third Claim for Relief (Alleging Fraud):**

84.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83 of this Complaint with the same force and effect as if fully set forth at length herein.

**Response:** Defendants incorporate by reference the responses to paragraphs 1-84.

85. "The statutory requirement that an affidavit of confession of judgment state concisely the facts out of which the debt arose and show that the sum confessed is justly due or to

become due, is designed to protect innocent third parties who might be prejudiced in the event that a collusively confessed judgment is entered." *Balahtsis v Shakola*, 197 AD3d 547, 547-48 [2d Dept 2021].

**Response:** Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

86. The amounts represented by each of the confessions of judgment are inconsistent with CPLR 3218 as they do not properly apprise third parties, like Plaintiff as a Creditor, of the liability the Debtor confessed.

**Response:** Deny

87. A third party investigating the amounts of the confessions of judgment is left baffled as to the genuineness of the confessions of judgment. The post judgment statements Defendants made in regard to the nature of the debt, coupled with the contradictory statements that shift of whether these confessions of judgment arise from a purchase of stock or direct loans to Cardis, and the fact that Defendants are cofounders of Cardis. The nature of such statements leaves a third party with no ability to verify the genuineness of each confession of judgment.

**Response:** Assert that the allegations are incomprehensible, and therefore deny.

88. For instance, a third party investigating the claims made by Defendants would be guided by common knowledge that the act of purchasing stock in a corporation is an act of

acquiring an asset/equity. The knowledge that a third party has is that the person holding an asset in a corporation is not holding a loan from a bona fide lender with a right of repayment with compounded interest, but such asset may call for a preferred return of the amount of capital contribution and a fair percentage of the equitable distribution. The circumstances presented by Defendants as to how they acquired stock in Cardis, of which they are cofounders, and the amounts of the capital contribution being a loan generating interest, are circumstances that a third party would see as a collusion.

**Response:**  Assert the allegations consists solely of legal conclusions for which no answer is required; further, assert that the allegations are incomprehensible and therefore deny.

89.  The statements of Defendants, as listed above in paragraphs 44 and 53 contravene with the nature of the debts. Each confession of judgment states "This Confession of Judgment is not for the purpose of securing Shalom S. Maidenbaum against a contingent liability." Yet, the post judgments statements show that the Defendants created the promissory notes as security for their investments in Cardis. In other words, in the contingent event should Cardis fail, the Defendants would hold the Debtor liable for such debt. These contradictory "facts" violate CPLR 3218 by failing to either state "stating concisely the facts out of which the debt arose" or "stating concisely the facts constituting the liability and showing that the sum confessed does not exceed the amount of the liability."

**Response:**  Deny

90.  In particular, CPLR 3218 requires that the nature of the contingent liability must state "concisely the facts constituting the liability and showing that the sum confessed does not

exceed the amount of the liability." In other words, the confessions of judgment do not state concisely the facts constituting the liability, and each confession of judgment fails to show that the sum confessed does not exceed the amount of the liability.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

91.    A live controversy persists entangling the parties over who is a legitimate creditor of the Debtor. The only leverage Defendants have in alleging to be a creditor of the Debtor is the purported judgments, all arising from confessions of judgment that offer inconstant facts as to the nature of the debt.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

92.    Wherefore, Plaintiff requests that the Court settle the issue once for all and decide the validity of the confessions of judgment. A decision by the Court will allow valid creditors and the Debtor to recognize.

**Response:**    Neither admit nor deny since the allegation consists solely of legal conclusions for which no answer is required.

93.    Defendants have no basis of fact to support the confessions of judgement, otherwise the confession would state concisely the facts giving rise to the debt. The confessions fail to state concisely the facts because the contradictory versions offered by Defendants are simply fraudulent against third parties.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no

answer is required, and therefore deny.

**Responding to the Fourth Claim for Relief (Alleging Non-Compliance with a Judgement Creditor's Obligations under the CPLR**

94.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 93 of this Complaint with the same force and effect as if fully set forth at length herein.

**Response:**   Defendants incorporate by reference their  responses to paragraphs 1-93.

95.   Defendants have utilized the judgements outlined above to levy assets belonging to either to the Debtor or Cardis.

**Response:**   Deny, and assert that Maidenbaum's only successful collection efforts were pursuant to the judgments as filed in Israel.

96.   Neither Defendant liquidated into cash any of the levied assets it received when it took over Cardis in July 2016 after the judgments were entered.

**Response:**   Assert that the allegation is incomprehensible, and therefore deny; further deny that either defendant took over Cardis.

97.   Neither Defendant recorded any partial satisfaction of the judgments outlined above.

**Response:**   Admit.

98.   In an effort to reorganize the Debtor's debt, the Debtor's Estate is entitled to an accounting of all assets that Defendants levied as a result of judgments outlined above in order to reduce the amount of outstanding liabilities the Debtor is indebted.

**Response:**   Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

99.   In the event that Plaintiff succeeds in vacating any judgment outlined above, the

Creditors and Estate of the Debtor is entitled to recovery of any asset unjustly levied.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

100.   In the event that Plaintiff cannot succeed in vacating any judgment outlined above, Plaintiff is entitled to have such levied assets determined as a full accord and satisfaction of the judgments.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

101.   In the event that Plaintiff cannot succeed with a full accord and satisfaction of the judgments, Plaintiff is entitled to have such levied assets reduce the amount of debt owed by the Debtor.

**Response:**    Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

102.   In particular, Defendants took possession of the following: (i) Cardis as a whole, including its assets, (ii) the Debtor's stock in ePoint, (iii) the Debtor's interest in a marital home in Sullivan County, and (v) personal belongings of the Debtor.

**Response:**   Deny

103.   Upon each levy, Defendants did not return an execution as required under CPLR 5230[c].

**Response:**    Defendants complied with their obligations under CPLR 5230(c), and the obligation to return a levy is placed on the governmental agent, such as a sheriff or marshal, who is enforcing it.  Defendants routinely extended the time that the sheriff and marshal had to

enforce the levy.

104.   Upon each levy, Defendants did not follow through with the requirements of CPLR 5232 and 5236.

**Response:**  Deny

105.   As a direct result, Plaintiff seeks an order directing Defendants to account to the Court for all assets they levied utilizing any judgment in which the Debtor would be entitled to a reduction of the amount of debt.

**Response:**   Assert that the allegation consists solely of legal conclusions for which no answer is required, and therefore deny.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense:**
**Lack of Standing**
**(by Stein and Maidenbaum)**

106.   Paragraphs 1-105 are repeated and realleged as if fully set forth herein.

107.   Maidenbaum is a judgment creditor of Cardis Enterprises International B.V., Cardis Enterprises International N.V., Cardis Enterprises International (USA) Inc. and Aaron Fischman.  The judgments, which were filed in the office of the Nassau County Clerk, are:

(a) *Maidenbaum v. Cardis Enterprises International, B. V., et al.,* Index No. 604610/2016 in the principal amount of $2,576,446.78 jointly and severally against Cardis B.V., Cardis N.V., Cardis USA, Choshen Israel, LLC ("Choshen") and Aaron Fischman, entered on June 21, 2016.

(b) *Maidenbaum v. Cardis Enterprises International, B. V., et al.,* Index No. 604766/2016 in the principal amount of $355,542.98 jointly and severally against Cardis B.V., Cardis N.V., Cardis USA, Choshen and Fischman, entered on June 28, 2016.

(c) *Maidenbaum v. Fischman,* Index No. 604767/2016 in the principal amount of $285,500.17 against Fischman, entered on June 28, 2016.

- and-

(d) *Maidenbaum v. Fischman,* Index No. 604768/2016 in the principal amount of $57,054.85 against Fischman, entered on June 28, 2016.

The Cardis entities operated as a single enterprise without regard to formal or corporate distinctions and will be collectively referred to as "Cardis."

108.   Considering post-judgment (CPLR 5003) interest and partial collections, the total amount due under the judgments as of the filing of this Answer is $3,075,991.32.  Each judgment is based on the failure to pay a promissory note.

109.   Weisshaus lacks standing to challenge the confessions of judgment.

110.   Any claim of reliance by a third-party (*i.e.*, an individual or entity that is not a party to the agreement or communication at issue) is not sufficient to state a fraud claim. *Pasternack v. Laboratory Corp. of America Holdings*, 27 N.Y.3d 817, 829, 37 N.Y.S.3d 750, 758 (2016).

111.   The requirements imposed by CPLR 3218, a rule regarding confessions of judgments, are intended to protect legitimate creditors of a defendant.  *Cash and Carry Filing Service, LLC v. Perveez*, 149 A.D.3d 578, 50 N.Y.S.3d 277 (1st Dep. 2017).

112.   Weisshaus is not a legitimate creditor of Fischman.  Instead, his claim against Fischman was concocted solely for strategic purposes.

113.   Weisshaus is a paralegal and errand runner for Levi Huebner; Fischman's long time attorney.  Weisshaus has been named as a plaintiff in consumer-type actions filed by Huebner, as counsel. Huebner has notarized documents filed by Weisshaus in this case.  Weisshaus also lists Huebner's office address, *i.e.*, 488 Empire Boulevard, Brooklyn, New York  11225, as his address on personal correspondence, such Weisshaus' November 21, 2021 letter to the

33

Woodbridge, New York police department.

114. According to Weisshaus's proof of claim and the documents it attaches, *In re Fischman*, 23-36038-cgm, Claim 1-1, Weisshaus loaned Fischman between $17,990 and $64,515 during the last three months of 2023 and, in consideration of these loans, received three separate promissory notes, executed on September 29, 2023, October 6, 2023 and December 18, 2023. The first of the two notes were executed by Fischman during the previous bankruptcy case, *i.e.*, *In re Aaron Fischman*, 23-35660-cgm (Bankr., S.D.N.Y.)

115. Fischman's schedules and Summary of Financial Affairs in his previous bankruptcy case did not list Weissman as a creditor or lender, or refer to him in any fashion. On information and belief any money that Weisshaus provided to Fischman pursuant to a loan agreement was returned to Weisshaus, through Cohen LaBarbera and/or Joel Landau as conduits.

116. On November 24, 2023, Weisshaus filed a summons and complaint in Supreme Court Sullivan County in which he sought to recover the amount allegedly owed by Fischman. That was three days after this Court's decision, as set forth on the record on November 21, 2023, to dismiss Fischman's previous bankruptcy filing, *In re Aaron Fischman*, 23-35660-cgm (Bankr., S.D.N.Y.) on the record to November 21, 2023.

117. The affidavit of service of Weisshaus' summons and complaint against Fischman in the Sullivan County action was signed by Feige Zaretsky, who states in that affidavit that she served Fischman at a residence in Brooklyn, that was not his own, on November 28, 2023. Zaretsky, the alleged process server, is the daughter of Ahron Berlin. (Berlin was the individual who commenced the sham and collusive involuntary Chapter 11 case, *In re Aaron Fischman*, 23-35368-cgm (Bankr., S.D.N.Y.), against Fischman on May 8, 2023, one day before Fischman

was to appear before Justice Cozzens for a deposition and document production, or face arrest and incarceration.[1])

118.   Notwithstanding the service by Zaretsky, Fischman did not appear or file an answer in Weisshaus' Sullivan County action.

119.   On November 30, 2023, in the contempt proceeding, Justice Cozzens ordered Fischman to appear in Court for his deposition and document production on December 20, 2023, or face arrest and incarceration.

120.   On December 19, 2023, Weisshaus—one day before Fischman was to appear in Justice Cozzens' Courtroom for his deposition and document production in Maidenbaum's contempt proceeding against Fischman—Fischman filed another bankruptcy case, *In re Aaron Fischman*, 23-36038-cgm (Bankr., S.D.N.Y.)  That was Fischman's third bankruptcy (and fourth if *In re Choshen Israel, LLC*, Case No. 23-35636-cgm (Bankr., S.D.N.Y.) is counted) filed for the purpose of staying the deposition and contempt proceeding.  That same day, Levi Huebner, Fischman's lawyer, filed a letter with Justice Cozzens incorrectly arguing that the new bankruptcy automatically stayed Maidenbaum's contempt proceeding against Fischman. Relying on 11 U.S.C. §362(c) (4)(A)(i)[2], Justice Cozzens rejected the argument and issued a warrant requiring any New York state law office that could apprehend Fischman to arrest and incarcerate him.

121.   Also, on December 19, 2023, in Weisshaus' Sullivan County action against

_____

[1]Berlin's involuntary case against Fischman was dismissed on July 11, 2023.

[2]11 U.S.C. 362(c) (4)(A)(i) (third filing within previous year does not trigger automatic stay); *Dobrer v. PennyMac Corp.*, 2018 WL 6437068, *1 (E.D.N.Y., Dec. 7, 2018) (same, even when one of the prior cases was involuntary).

Fischman, Weisshaus filed an affidavit of mailing of an additional copy of the summons and complaint to Fischman pursuant to CPLR 3215(g)(4). The affidavit of mailing, like the affidavit of service of Weisshaus' summons and complaint against Fischman, was signed by Zaretsky, the Berlin's daughter.

122.   Despite Fischman's alleged default and the Sullivan County action by Weisshaus against Fischman, Weisshaus claims that he loaned an additional $30,000 to Fischman in exchange for a promissory note dated December 18, 2023.  If these loans were not sham conduct and the Sullivan County action not a collusive proceeding, then Weisshaus acted irrationally in loaning an additional $30,000 to Fischman on December 18, 2023.

123.   Based, *inter alia*, on Zaretsky's affidavit of mailing, on December 22, 2015, a default judgment was entered in Weisshaus' favor and against Fischman in the Sullivan County action, in the amount of $34,515.

124.   Zaretsky's alleged activity as process server on behalf of Weisshaus, shows that a small group of individuals known to each other—Huebner, Berlin, Zaretsky and Weisshaus—colluded in sham filings in this Court and in Sullivan County to impede Maidenbaum's efforts to enforce his judgments against Fischman.  The sham filings include the Berlin's involuntary case against  Fischman, which was filed the day before Fischman's court-ordered bankruptcy in Maidenbaum's supplemental proceeding, Weisshaus' proof of claim in *In re Fischman*, Case No.  23-36038 (CGM) and this adversary proceeding.

125.   Fischman did not need a loan from Weisshaus since Fischman received the following amounts in recent years, that, whatever their original source, were funneled to him (and occasionally to his designated payees) through Ultimax Digital, Inc., Cohen, LaBarbera &

Landrigan, LLP and various companies affiliated with an individual named Joel Landau:

- $315,200 from Ultimax to Fischman during the period July 20, 2020 to November 2022

- $1,532,500 from Cohen LaBarbera to Fischman during the period August 11, 2021 to November 17, 2022

- $339,575 from Landau and his companies to Fischman during the period August 11, 2021 to December 21, 2022

126.   For the foregoing reasons, Weisshaus is not a legitimate creditor of Fischman and lacks standing to challenge the confessions of judgment since "a violation of CPLR §3218 may render the judgment by confession subject to vacatur [only] at the behest of a *bona fide* creditor." *GTR Source, LLC v. Futurenet Group, Inc.*, 2018 WL 1310416, *2 (Sup. Ct., Rockland Co., Mar. 13, 2018).

**Second Affirmative Defense:**

**Res Judicata**
**(by Stein and Maidenbaum)**

127.   Paragraphs 1-126 are repeated and realleged as if fully set forth herein.

128.   Had any technical defects existed within Fischman's confessions of judgment filed by Maidenbaum or the promissory notes underlying the confessions of judgment (there weren't), Fischman was required to raise those defects before entry of judgment. A judgment by confession has the same *res judicata* effect as any other judgment.  *Pennsylvania Factors Corp. v. Goldman*, not officially reported, 39 N.Y.S.2d 670, 671 (1942) ("'The same general rules which govern judgments generally apply to a judgment by consent or upon stipulation.' * * * 'A judgment by confession stands in much the same position as one by stipulation or consent, being a conclusive adjudication of all matters embraced in it and a bar to any subsequent action upon

the same claim.'" (internal citation omitted)).

129.   Even if Weisshaus had standing to pursue his claims, the allegations he raises were merged into the judgments based on those instruments entered in 2016.  *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives."); *Pennsylvania Factors Corp.*, *supra*  (judgment by confession "is an estoppel, merger or bar under the same circumstances and to the same extent as any other judgment" (internal citations omitted)).

## MAIDENBAUM'S COUNTERCLAIM and CROSS-CLAIM:

**Request for a Declaratory Judgment pursuant to
28 U.S.C. §2201(a) that Maidenbaum's Judgments
against Fischman, the Confessions of Judgment Signed
By Fischman and the Promissory Notes Underlying
Maidenbaum's Judgments are Valid and Enforceable
(by Maidenbaum as a Counterclaim against
Weisshaus and as a Cross-Claim against Fischman)**

130.   Paragraphs 1-129 are repeated and realleged as if fully set forth herein.

131.   The federal Declaratory Judgment statute, 28 U.S.C. §2201(a), provides, in relevant part,

> In a case of actual controversy within its jurisdiction [inapplicable exceptions omitted], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

132.   An actual controversy exists between Maidenbaum, on one side, and Weisshaus and Fischman, on the other, as to whether Maidenbaum's four judgments against Fischman, the confessions of judgment signed by Fischman in Maidenbaum's favor, and the separate

promissory notes by Fischman underlying the four respective judgments are valid and enforceable.

133. Weisshaus' complaint was ghost-written by Fischman's own attorney, Levi Huebner, and acknowledges that it is intended to benefit Fischman.[3]

## A. Each of the Promissory Notes Underlying Maidenbaum's Judgment is Supported by Sufficient Consideration

134. A $275,000 promissory note (**Exhibit 1**) is the contractual basis for the June 28, 2016 judgment in the amount of $355,542.98, and a $2 million promissory note (**Exhibit 2**) is the basis for the June 21, 2016 Judgment in the amount of $355,542.98. Fischman signed both promissory notes on February 23, 2015. A $250,000 promissory note (**Exhibit 3**), signed by Fischman on May 4, 2015, is the contractual basis for the June 28, 2016 judgment in the amount of $285,500.17. A $50,000 promissory note (**Exhibit 4**), signed by Fischman on June 19, 2016, is the contractual basis for the June 28, 2016 judgment in the amount of $57,054.85.

135. Weisshaus' complaint in this adversary proceeding alleges that there is inadequate consideration supporting the four promissory notes that are the basis of Maidenbaum's judgments against Fischman. (The judgments are set forth in ¶125, *supra*.) The allegation is frivolous.

### (i) The Consideration for the $275,000 Note

136. The consideration for the $275,000 promissory that underlies the June 28, 2016 judgment is s recited on its face: advances made on the following:

---

[3]Linguistically, and in terms of the volume of attachments, the Weisshaus' complaint is similar to an ostensibly *pro se* complaint that Nina Fischman (Aaron's wife), who was then represented by Huebner, filed against Nassau County Justice Vincent Murphy in 2021 after Justice Murphy ruled against arguments Huebner advanced on Nina's behalf.

"principal loan date[s]:

| | |
|---|---|
| October 7, 2014 | $100,000.00 |
| November 7, 2014 | $100,000.00 |
| February 23, 2015 | $75,000.00 |

**Exhibit 1** hereto, at p. 1.  The cancelled checks for these three advances, which were each posted

between one and three days following the date of the check, are annexed as **Exhibit 5**.

Maidenbaum's checks were made out to Lawrence R. Katz, who received them on behalf of

Choshen Israel, LLC.  *See People ex rel Letitia James v. Aaron D. Fischman*, Sup. Ct., New

York Co., Index No. 452353/2018, Amended Complaint, at ¶15,  ¶29. Cardis used Katz's IOLA

account as its "principal . . . bank account."  *Id.*, ¶160.

### (ii)  The Consideration for the $2 Million Promissory Note

137.   As of December 8, 2010 Maidenbaum had advanced $1,625,000 in funding for

Cardis.   Consideration "may be explained . . . by parol evidence."  *Maksoud v. Ishakov*, 187

A.D. 3d 1167,1169, 134 N.Y.S.3d 91, 93 (2d Dept. 2020).  The relevant parol evidence—checks

written by Maidenbaum representing the $1,625,000 in advances—is annexed hereto as **Exhibit

6.**

138.   On December 8, 2016 Maidenbaum and Fischman, acting on behalf of Choshen

and Cardis, entered into a written agreement (**Exhibit 7**) that designated $775,000 of the

$1,625,000 in advances that Maidenbaum  provided as "loans to Cardis," and the remaining

$850, 000 as for "direct stock purchases from Choshen of Cardis' stock"—*i.e.*, equity (*id.*, p. 1,

3rd Whereas Clause).

139.   That same day—December 8, 2010—Fischman, on behalf of Choshen, executed a

promissory note documenting the repayment terms for the $775,000 loan (hereinafter, the

"December 8, 2010 Promissory Note," **Exhibit 8**).   The December 8, 2010 Promissory Note was supported by not only past consideration but also contemporaneous consideration in the form of an additional $125,000 that Maidenbaum loaned to Cardis that same day.  (*See* **Exhibit 8**, at p. 1; **Exhibit 9** (check for $125,000)).  *See Levine v. Kornheim*, 255 A.D. 467, 470, 7 N.Y.S.2d 918, 920 (1st Dept. 1938) (contemporaneous consideration makes an agreement enforceable); *accord: In re Pruitt*, 72 B.R. 436, 444 (Bankr., E.D.N.Y. 1987). On December 8, 2015, Maidenbaum agreed to lend Cardis, or invest in Cardis, an additional $250,000, which is yet additional consideration.  **Exhibit 7**, Eighth "Wherefore" clause.  *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 464, 457 N.Y.S.2d 193, 196  (1982) (co-extensive future performances are "not necessary when the promisor receives other valid consideration" * * * since "'[i]t is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him'" (internal citation omitted)).

140.  The amount of consideration for the December 8, 2010 Promissory Note was of course sufficient.  *Id.*  ("[C]ourts have not hesitated to find sufficient consideration not only in what is now the proverbial peppercorn . . . but in 'a horse or a canary, or a tomtit'" (citations omitted)).

141.  On December 15, 2010, Choshen failed to pay the amount due under the December 8, 2010 Promissory Note and default interest at 24 percent (24%) began to accrue on the full $775,000 principal amount.  **Exhibit 8**, 1st and 2nd paragraphs.  Between December 15, 2010 and February 23, 2015, $779,671.23 in interest accrued on the December 8, 2010 Promissory Note[4], bringing the amount due under that note to $1,554,671.23.

---

[4] $775,000*.24*1530/365 =  $779,671.23

142.   Between February 11, 2011 and February 14, 2014, Maidenbaum advanced an additional $625,000 to Cardis.   *See* the checks annexed hereto as **Exhibit 10.**[5]

143.   As of February 23, 2015, the principal and accrued interest on the December 8, 2010 Promissory Note, together with the additional advances totaled $2,179,671.23.   ($775,000 +  $779,671.23 + $625,000 = $2,179,671.23.)

144.   On February 23, 2015, the $2,179,671.23 debt was reduced to $2 million, and Fischman, on behalf of Choshen and Cardis, and individually as guarantor, executed the $2 Million Promissory Note.  **Exhibit 2**.  The $2 Million Promissory Note  states:  "This Note shall supercede all prior Notes, other than a Note of even date covering a separate obligation by Payor in the principal sum of Two Hundred Seventy-Five Thousand Dollars."  *Id.*,  p. 1.  Since the $2 million note supplanted the December 8, 2010 Promissory Note and the $2,179,671.23 past due debt, the $2 Million Promissory Note is an enforceable novation.  *Leeward Isles Resorts, Ltd. v. Hickox*, 49 A.D.3d 277, 278, 853 N.Y.S.2d 41 (1st Dept. 2008) ("The 1989 loan agreement between . . . creditor's assignor and . . .  guarantor's principal, which significantly increased the amounts extended under the 1986 loan agreement . . . and expressly "supersede[d] and replace[d]" the 1986 loan agreement, did not merely modify the 1986 loan agreement . . . but constituted a novation thereof").  The addition of Cardis as new obligor and Fischman as a guarantor makes the $2 million note a true novation.  *Johnson & Johnson v. Guidant Corp.*, 2014 WL 3728598, *10 n.10 (S.D.N.Y., July 22, 2014)  ("Technically, and as used by both the Restatement (Second) of Contracts and most courts, a novation differs from other substituted

---

[5]A copy of one check from this group is missing, Check No. 3471, which was in the amount of $65,000 and written on December 31, 2010.

contracts in that a novation involves the addition of a new party to the transaction.")

145.   For a novation—such as the $2 Million Promissory Note—"discharge of the original contract usually constitutes sufficient consideration for the substituted contract[.]" *Wasserstrom v. Interstate Litho Corp.*, 114 A.D.2d 952, 954, 495 N.Y.S.2d 217, 219 (2d Dept. 1984); *accord:  Evergreen Marine Corp. v. Welgrow Intern. Inc.*, 942 F.Supp. 201, 209 (S.D.N.Y. 1996).

146.   Further consideration for the $2 Million Promissory Note was provided in the form of  Maidenbaum's forbearance from enforcing the terms of the December 8, 2010 Promissory Note,  *Leef v. Steele*, 81 A.D.2d 764, 439 N.Y.S.2d 113, 114 (1st Dept. 1981), and the additional $75,000  Maidenbaum advanced at the time the $2 Million Note was signed, *Capital Stack Fund, LLC v. Badio*, 2012 WL 3234283, *3 (Sup. Ct., Rockland Co., July 15, 2012).  Still further consideration exists because the maturity date for the $2 Million Promissory Note was later than that for the December 8, 2010 Promissory Note, *Liberty Nat'l Bank v. Gross*, 201 A.D.2d 467, 467-468, 607 N.Y.S.2d 419, 420 (2d Dept. 1994); and since Maidenbaum forgave part of the $2,179,671.23 then due to him, *Wyndham Hotel Group International, Inc. v. Silver Entertainment LLC*, 2020 WL 5517519, *3 (S.D.N.Y., Sept. 14, 2020).

**(iii)  The Consideration for the $250,000 Promissory Note**

147.   The $250,000 Note (**Exhibit 3**) contains a specific recitation of *actual* past consideration since it specifically refers to a $250,000 loan amount, which it states is "outstanding," *i.e.*,: "the principal sum of Two Hundred Fifty Thousand Dollars ($250,000.00) together with all interest on the *outstanding* principal amount at a rate·of eight (8%) percent per annum. . . [.]"  (Emphasis added.)   The check for the $250,000 loan is annexed as **Exhibit 11**.

### (iv)  The Consideration for the $50,000 Promissory Note

147.   The $50,000 Note (**Exhibit 4**) contains a specific recitation of *actual* past consideration since it specifically refers to a $50,000 loan amount, which it states is "outstanding," *i.e.*,: "the principal sum of Fifty Thousand Dollars ($250,000.00) together with all interest on the *outstanding* principal amount at a rate·of eight (8%) percent per annum. . . [.]" (Emphasis added.)  The check for the $50,000 loan is annexed as **Exhibit 12**.

### B.  The Confessions of Judgment Comply with CPLR 3218

148.   Fischman's affidavit of confession of judgment based upon the $275,000 note (**Exhibit 13**) and underlying the Maidenbaum's $355,542.98 judgment sets forth **(a)** the date of the loan (**Exhibit 13**, at pp. 1-2, at ¶2:  "February 23, 2015"); **(b)** the amount of the loan (*id.*, at p. 2, at ¶5: "$275,000"); (c) the interest rate (*id.*, at pp. 1-2, at ¶2: "8%"; *id.*, at p. 2, at ¶5: 24% from default to entry of judgment; and thereafter at the statutory 9% rate); (d) the repayment date (*id.*, p. 2, ¶3:  "April 30, 2015"); and (e) the amount of the confessed judgment that was principal (*id.*, at p. 2, at ¶5:  "$275,000 million").  According to the terms of the confession of judgment, the amount of (f) interest due on the date of the default was $29,777.51; and at the time of entry of judgment an additional $76,448.61 in interest was due.  Since no amounts were repaid, there was nothing to recite in that regard.  *Regency Club at Wallkill, LLC v. Bienish*, 95 A.D.3d 879, 942 N.Y.S.2d 894 (2d Dept. 2012) (upholding confession of judgment since "the record reflects that the affidavit was sufficiently particular so as to enable any interested third parties to investigate the claim and ascertain its validity"); *American Water Restoration, Inc. v. AKF Inc.*, 2022 WL 176400, *2 (Sup. Ct., Ontario Co., Jan. 7, 2022) (confession of judgment was sufficient since it stated "the sum borrowed and . . . the agreement's main terms and date,"

notwithstanding its incorporation by reference of an "affidavit that included inaccurate information, [since] this mistake did not affect the actual judgment amount").

149. Fischman's affidavit of confession of judgment (**Exhibit 14**) underlying Maidenbaum's $2,576,442.78 judgment and based upon the $2 million note sets forth (a) the date of the loan (**Exhibit 14**, pp. 1-2, at ¶2: "February 23, 2015"); (b) the amount of the loan (*id.*, at p. 2, at ¶5: "$2 million"); (c) the interest rate (*id.*, at pp. 1-2, at ¶2: "8%; *id.*, at p. 2, at ¶5: "24% from default to entry of judgment"); (d) the repayment date (*id.*, p. 1, ¶3: "April 30; 2015"); and (e) the amount of the confessed judgment that was principal (*id.*, at p. 2, at ¶5: "$2 million"). According to the terms of the confession of judgment, the amount of (f) interest due on the date of the default was $29,777.51; and at the time of entry of judgment an additional $546,665.30 in interest was due. Since no amounts were repaid, there was nothing to recite in that regard. The confession of judgment complies with CPLR 3218. *Regency Club at Wallkill, LLC*, *supra*; *American Water Storage, Inc.*, *supra*.

150. Fischman's affidavit of confession of judgment (**Exhibit 15** underlying the $285,500.17 judgment and based upon the $250,000 note sets forth (a) the date of the loan (**Exhibit 15**, p. 1, at ¶2: "May 4, 2015"); (b) the amount of the loan (*id.*, at ¶5: "$250,000"); (c) the interest rate (*id.*, pp. 1-2, at ¶5: "8%" and, upon default, "16% from default to entry of judgment"); (d) the repayment date (*id.*, p. 2, ¶3: "July 21, 2015") and (e) the amount of the confessed judgment that was principal (*id.*, at p. 1, at ¶5: "$250,000"). According to the terms of the confession of judgment, the amount of (f) interest due on the date of the default was $5,833.80; and at the time of entry of judgment an additional $29,666.37 in interest was due. Since no amounts were repaid, there was nothing to recite in that regard. The confession of

judgment comply with CPLR 3218. *Regency Club at Wallkill, LLC*, *supra*; *American Water Storage, Inc.*, *supra*.

151.     Fischman's affidavit of confession of judgment  (**Exhibit 16**) underlying the $57,054.85 judgment and based upon the $50,000 note sets forth (a) the date of the loan (**Exhibit 16**, p. 1, at ¶2:  "May 4, 2015"); (b) the amount of the loan (*id.*, p. 1, at ¶5:  "$50,000"); (c) the interest rate (*id.*, pp. 1-2, at ¶5:  "8%"  and, upon default, "16% from default to entry of judgment"); (d) the repayment date (*id.*, p. 1, ¶3:  "July 21, 2015"); and (e) the amount of the confessed judgment that was principal (*id.*, at p. 1, at ¶5:  "$50,000").   According to the terms of the confession of judgment, the amount of (f) interest due on the date of the default was $1,122.11; and at the time of entry of judgment an additional $5,932.74 in interest was due. Since no amounts were repaid, there was nothing to recite in that regard.  The confession of judgment complies with CPLR 3218.  *Regency Club at Wallkill, LLC*, *supra*; *American Water Storage, Inc.*, *supra*.

**C.  None of the Instruments at Issue are
     Invalidated Because Stein Notarized Them**

152.     Outside limited contexts defined by statute, no requirement exists that promissory notes, guaranties or other instruments for the payment of money include an acknowledgment of the maker's or guarantor's signature.  *Corona Fuel Corp. v. Nayci*, 2013 WL 12099489,*1-2 (Sup. Ct., Nassau Co., July 20, 2013).  An instrument that does not need to be notarized is not rendered invalid because the notary's attestation is defective.  *Id.*

153.     A notary is not disqualified from authenticating a signature unless he is a named party with obligations under the agreement or, at minimum, directly interested in the instrument being signed.  *Wright v. Bedford*, 17 Misc.2d 211, 182 N.Y.S.2d 660, 662 (Sup. Ct., Westchester

Co., Dec. 29, 1958) ("A notary acts as an administrative officer, and the fact that a notary is a stockholder and director of a corporation involved in a transaction will not void a corporate acknowledgment taken by him."); *Alfieri v. Guild Times Pension Plan*, 446 F. Supp. 2d 99, 112 (E.D.N.Y. 2006) (fact that a notary was participant in ERISA plan did not render invalid his notarization of spousal waiver form for another participant since the notary was not financially affected by the waiver).

154.   Stein was not a party to the 2015 Notes, nor did he have an indirect interest in those instruments, and the instruments underlying the confessions of judgment are not invalid or unenforceable because Stein notarized Fischman's acknowledgement.

### RESERVATION OF RIGHTS

Maidenbaum and Stein hereby reserve the right to assert any additional defenses or claims that are timely, warranted in light of newly-discovered evidence and/or within the Court's equitable powers to allow.

WHEREFORE, Maidenbaum requests judgment as follows:

1.   Dismissing the complaint with prejudice.

2.   Pursuant to 28 U.S.C. §2201(a), declaring that Maidenbaum's judgments against Fischman, the confessions of judgment that Fischman delivered to Maidenbaum and the promissory notes underlying Maidenbaum's judgments are valid and enforceable.

3.   An award of allowable costs, disbursements and attorneys fees.

- and -

4.   Such other relief as the Court may deem just and appropriate.

Dated: New York, New York
      January 29, 2023

Berry Law PLLC

By: /s/Eric W. Berry
      Eric W. Berry
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 355-0777
berrylawpllc@gmail.com

Tarter Krinsky & Drogin LLP

By: /s/Michael Z. Brownstein
      Michael Z. Brownstein
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
mbrownstein@tarterkrinsky.com

*Attorneys for defendants Jonathan Stein and*
*Shalom Maidenbaum*