# EXHIBIT 7

```
          UNITED STATES BANKRUPTCY COURT
           SOUTHERN DISTRICT OF NEW YORK
----------------------------X Case No.: 23-35636
IN RE:                        Chapter 11

CHOSHEN ISRAEL, LLC,          355 Main Street
                              Poughkeepsie, NY 10601
            Debtor
----------------------------X November 21, 2023
                              9:58 a.m.- 10:33 a.m.
```

**23-35636-cgm** Choshen Israel LLC *Chapter 11*

Linda M. Tirelli representing Choshen Israel LLC (Debtor)
Alicia M. Leonhard representing United States Trustee (U.S.
Trustee)

Doc# 23 Amended Motion to Dismiss Case for Cause and Notice
of Hearing, replacing ECF 16 filed by Eric W. Berry on behalf
of Shalom S. Maidenbaum with hearing to be held on 10/17/2023
at 09:00 AM at Videoconference (ZoomGov) (CGM) Responses due
by 10/10/2023,. (Attachments: # 1 Exhibit 1-Maidenbaum
Judgment v. Choshen (6-21-16) # 2 Exhibit 2-Maidenbaum v.
Choshen (6-28-16) # 3 Exhibit 3-Contempt Order


[DOCKET MATTERS AND APPEARANCES CONTINUED ON NEXT PAGE]

                HONORABLE CECELIA MORRIS
              UNITED STATES BANKRUPTCY JUDGE

DIGITALLY RECORDED PROCEEDING TRANSCRIBED BY:
Laurie A. Pellitteri, Digital Transcriber
.......................................................
                **American Legal Transcription**
                 **11 Market Street Suite 215**
                  **Poughkeepsie, NY  12601**
             **Tel.(845)452-3090 Fax:(845)452-6099**
              **www.AmericanLegalTranscription.com**

1  DOCKET MATTERS:

2  (4-25-23) # 4 Exhibit 4-Order Rescheduling Deposition and
   Contempt Proceeding (8-1-23) # 5 Exhibit 5-Severance Order
3  (8-7-23) # 6 Exhibit 6-$2MM note Choshen to Maidenbaum
   (2-23-15) # 7 Exhibit 7-$275K note Choshen to Maidenbaum
4  (2-23-15) #8 Exhibit 8-Maidenbaum Checks to Katz for Cardis
   # 9 Exhibit 9-Spreadsheet Showing Maidenbaum loans and
5  equity investments (Cardis) # 10 Exhibit 10-AGs Amended
   Complaint v. Katz and Choshen # 11 Exhibit 11-Fischman
6  guilty plea (12-15-22) # 12 Exhibit 12-Justice Reeds
   decision uphold AG claims (8-3-23) # 13 Exhibit 13-Cardis to
7  Ultimax Source Code Agreement (2018) # 14 Exhibit 14-Goodman
   affidavit (2-9-23) #15 Exhibit 15-NY AG Judgment v.
8  Fischman)

9  Doc# 10 Motion for Contempt togethr with Notice of Hearing
   and Proposed Order filed by Linda M. Tirelli on behalf of
10 Choshen Israel LLC with hearing to be held on 9/19/2023 at
   09:00 AM at Office of UST (355 Main Street, Poughkeepsie)
11 Responses due by 9/12/2023,. (Attachments: # 1 Exhibit
   Exhibit A # 2 Exhibit Exhibit B # 3 Exhibit Exhibit C part 1
12 of 2 # 4 Exhibit Exhibit C part 2 of 2 # 5 Exhibit Exhibit D
   part 1 of 2 # 6 Exhibit Exhibit D part 2 of 2 # 7 Exhibit
13 Proposed Order # 8 Exhibit Certificate of Service)

14 Doc# 42 Declaration in Opposition to Debtors Motion for
   Civil Contempt for Willful Violation of Bankruptcy Code
15 Sections 362(a)(1) and 362(a)(6) (related document(s)10)
   filed by Jill L. Makower on behalf of Shalom S. Maidenbaum.
16 with hearing to be held on 11/21/2023 at 09:00 AM at
   Videoconference (ZoomGov) (CGM)

17
   Doc# 44 Objection to Motion (related document(s)16, 23)
18 filed by Linda M. Tirelli on behalf of Choshen Israel LLC.
   with hearing to be held on 11/21/2023 at 09:00 AM at
19 Videoconference (ZoomGov) (CGM) (Attachments: # 1 Exhibit
   Certificate of Service # 2 Exhibit Transcript)

20
   APPEARANCES:
21
   VIRTUAL (ZOOM.GOV) APPEARANCES
22
   FOR THE DEBTOR:            Linda Tirelli, Esq.
23                            50 Main Street
                              Suite 1265
24                            for Choshen Israel, LLC
                              White Plains, New York  10606
25

```
 1
    UNITED STATES TRUSTEE:   Alicia M. Leonard, Esq.
 2                           Leo O' Brien Federal Building
                             United States Trustee
 3                           11A Clinton Avenue, Room 520
                             Albany, New York  12207
 4
    FOR SHALOM MAIDENBAUM:   Erik W. Berry, Esq.
 5                           Berry Law PLLC
                             745 Fifth Avenue
 6                           Ste 5fl Floor
                             New York, New York
 7
                             Michael Z. Brownstein, Esq.
 8                           Jill L. Makower, Esq.
                             Tarter Krinsky Drogin, LLP
 9                           1350 Broadway
                             11th Floor
10                           New York, New York  10018

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceeding commenced 9:58 a.m.)

2          THE COURT:  23-35636 Choshen Israel LLC.  State

3     your name and affiliation.

4          MS. LEONHARD:  Good afternoon, your Honor -- oh,

5     good morning, Alicia Leonhard for the United States Trustee.

6          MR. BERRY:  I'm Erik Berry for the creditor Shalom

7     Maidenbaum.

8          MS. TIRELLI:  Good morning, your Honor, Linda

9     Tirelli on behalf of the Debtor Choshen Israel, LLC.

10         MR. BROWNSTEIN:  Michael Brownstein, your Honor,

11    Tarter, Krinsky and Drogin, Counsel -- Co-counsel for Shalom

12    Maidenbaum.

13         THE COURT:  Very good.  So we have a motion for

14    sanctions for violation of the automatic stay and then a

15    motion to dismiss.  Correct?

16         MR. BERRY:  That's correct.

17         THE COURT:  Ms. Tirelli, I believe it's your

18    motion for the violation of the automatic stay.  Anything

19    you wish to add?

20         MS. TIRELLI:  No, your Honor, I don't wish to add

21    anything at this time to our motion.  I would like -- other

22    than to say that I noticed that Mr. Berry, I believe it

23    might have been Mr. Brownstein, somebody filed a whole pile

24    of papers last night.  It was after like around 8:00 at

25    night, if I am not mistaken.  I have not had a chance to

1  take a look at any of it, and I don't know if the Court is

2  considering that or not, but it was an extremely late

3  submission.

4          THE COURT:  It's too late, I don't know what it

5  is.

6          MS. TIRELLI:  Thank you, your Honor.

7          THE COURT:  (Inaudible)  Did somebody -- did you

8  all file something last night at 8:00?

9          MR. BERRY:  Yes.  What happened was, on Friday of

10  last week, the Choshen motion to dismiss was adjourned to

11  January 23.  And that adjournment was rescinded, and so we

12  needed to file reply papers.  And since I only learned about

13  the recission of that order late in the day, that's the best

14  we could do.

15          MS. TIRELLI:  Your Honor, I don't understand that.

16  It's their motion to dismiss.  I don't understand what that

17  means.

18          MR. BERRY:  No. --

19          THE COURT:  Mr. Berry, I don't need them.

20          MR. BERRY:  The papers submitted last night did not

21  relate to the contempt application.  They related to the

22  motion to dismiss which is our motion.  That motion had been

23  adjourned according the docket and according to e-mail from

24  Ms. Ashmead (phonetical) until January 23, then Ms. Tirelli

25  yesterday objected to the adjournment, and so I figured I'd

1  --

2          THE COURT:  You don't need that.  You did it in the

3  beginning.  You don't need to add anything to your

4  documents.  I don't know what you are trying to add, if it

5  was just from today from then, you had your motion to

6  dismiss set, so why would you -- you're confusing me.  I did

7  not--

8          MR. BERRY:  We --

9          THE COURT:  -- look at the documents.  I'm ready

10 to go forward.

11         MR. BERRY:  That's fine, your Honor.  I'm just

12 explaining that because of the late recission of the

13 adjournment and the rescheduling of the hearing for today,

14 and that happened only yesterday, we had not been able to

15 put in reply papers, so I decided to put them in and let the

16 Court do what it wants to do.

17         THE COURT:  That would be a sur reply.  That would

18 be a sur reply.  I did not read them, and I will not read

19 them.

20         MR. BERRY:  Okay.

21         THE COURT:  We're here for the motions for

22 sanctions on the automatic stay.  Y'all have had your

23 filings on this.  Anything you wish to add?  Do you wish to

24 add anything?

25         MR. BERRY:  Your Honor --

1          THE COURT:  I think I have enough, Mr. Berry.

2          MR. BERRY:  Oh, thank you.

3          THE COURT:  The Debtor is asserting that the filing

4     of the motion seeking to sever the case and proceed only

5     against Aaron Fischman violated the Debtor's Choshen

6     Israel's stay.  The Debtor seeks sanctions against Shalom

7     Maidenbaum, Mr. Maidenbaum, and his attorney Mr. Berry

8     that's on the phone today and Elliot Blumenthal.

9          On January the 21st, 2016, Mr. Maidenbaum commenced

10    actions against the Debtor and four co-defendants and that's

11    Fischman, Cardis Enterprise International BV, Cardis

12    Enterprise NV, Cardis Enterprise USA in the New York State

13    Supreme Court, Nassau County.  Mr. Maidenbaum received two

14    judgments against the Debtor and the co-defendants.

15    According to the State Court judgments, Choshen Israel,

16    Fischman and three other defendants are liable to Mr.

17    Maidenbaum in the amount of 4,826,981.76 which includes

18    post-judgment interest.

19         On August the 2nd, 2023, the Debtor filed for

20    Chapter 11 relief.  The Debtor listed Mr. Maidenbaum in his

21    petition, and his attorneys filed a notice of appearance on

22    August 3rd, 2023.  On August the 4th, 2023, without notice

23    or a motion, an order was entered in State Court severing

24    Erik Fischman from the other co-defendants in the action

25    since (inaudible) the severance order.  The severance order

also orders Mr. Fischman to comply with the post-judgment

discovery order entered against him.  Debtor argues that the

entry of the State Court Severance Order violates Choshen

Israel's stay.  The Debtor argues that by compelling

Fischman to proceed with post-judgment discovery in a case

in which he is a defendant but not also compelling Choshen

Israel somehow violates the stay of Choshen Israel.

Debtor argues that proceeding against Fischman who

is the guarantor makes little sense.  The Debtor argues, and

again, I'm not sure why, that continuing discovery in any

form in any action to continue a case against the Debtor.

The Debtor also argues that the State Court proceeding has

not been stayed nor dismissed against the Debtor.  There was

no violation of the stay in this case when Mr. Maidenbaum

through his attorney severed the Debtor from the State Court

action.  Continuing to sever discovery against a non-debtor

such as Mr. Fischman who at the time was not a debtor in

bankruptcy, of course subsequent to that, we know what

happened, I've already dealt with it this morning, can never

be a violation of the stay in a Chapter 11 case where there

is no co-debtor stay.

A suit against a co-defendant is not automatically

stayed by the Debtor's bankruptcy filing.  Queenie, Limited

versus Nygard International, 321 F.3rd, Second Circuit 2003,

also Teacher's Insurance and Annuity Assistance of America

versus Butler 803 F.2nd 61 Second Circuit 1986.  It is well established that stays pursuant to 362 (a) are limited to debtors and do not encompass co-bankruptcy non-bankrupt co-defendants.  Section 362 does not preclude severance.  Wedgeworth versus Fiberboard, 706 F.2nd 541 Fifth Circuit 1983.  We join in those courts concluding that the protection of 362 neither applied to co-defendants, nor precludes severance.  That's Johns Manville.  Happens to be my case now.  26 BR 405 Bankruptcy Southern District of New York 1983.  The Debtor has moved for a violations of the stay under 362 (a)(1) and (a)(6).  362 (a)(1) stays the continuation of a judicial proceeding against the -- and recovery of claims against the debtor.  Likewise, 362 (a)(6) stays any act to collect assets or recover a pre-petition claim against the debtor.  The term against the debtor should be strictly construed, In re Johnson 548 BR 770 Southern District of Ohio, 2016.

Here, Mr. Maidenbaum was not pursuing a claim against the debtor, he was proceeding to collect only against Mr. Fischman, a non-debtor co-defendant.  While there are certainly rare and unusual circumstances where a Court may extend the stay to protect a non-debtor, that is where there is such identity between the Debtor and the third-party defendant that the Debtor may be said to be a real party defendant and the judgment against the

third-party defendant will in effect be a judgment or a

finding against the debtor.  In re Johnson 548 BR 770

Southern District of Illinois -- Ohio, 2016.  The Debtor has

not made any argument that this relationship is this in this

case.  While it is true that Mr. Fischman is a former CEO of

the Debtor, a judgment against him will not be a judgment

against the Debtor because the debtor in this case in an

LLC.

Debtor does argue that any discovery Mr. Fischman

would need to produce would have to be produced through the

Debtor.  In some cases, the imposition of a substantial

burden of discovery against the debtor may be enough to

impose the stay.  In re Johnson 548 BR 770 again, Southern

District of Ohio, 2016.  The Debtor provides the Court with

no evidence that the Debtor would be substantially burdened

by Mr. Fischman's compliance with the discovery order.  It

is possible that Mr. Fischman has all of the discovery

requested by Mr. Maidenbaum in his possession.  And even if

this were the case, Mr. Fischman has now filed his own

bankruptcy case which is now mute because that was

dismissed, so that concern is over.

The Second Circuit has also stated that the stay

should not be extended to co-defendants where there are

efforts made in bad faith by non-bankrupt co-defendants in

order to escape from the liability imposed by an adverse

1    District Court judgment.  Here, Mr. Maidenbaum -- and that's

2    a Second Circuit opinion in 1986, and I said it before

3    Teacher's Insurance and Annuity Association of America

4    versus Butler 803 F.2d 61.  Here Mr. Maidenbaum has accused

5    the Debtor and Mr. Fischman of colluding in bad faith to

6    prevent Mr. Fischman from having to comply with the State

7    Court Order.  This motion is denied.

8         Now we have the motion to dismiss.  Does anyone

9    wish to add anything in their papers?

10        MR. BERRY:  Your Honor, I'm trying to unmute --

11   okay, I'm sorry.  I am unmuted.  The only thing I'd like to

12   add is that since we filed the motion, several claims have

13   been filed, two claims have been filed, our claim which is

14   about $4.8 million and Mr. Maidenbaum's claim.  Besides

15   that, the only other claim filed against Choshen, the only

16   other proof of claim with claims register is in the amount

17   of about $26,000 by the IRS.

18        This is a classic two-party dispute.  There is no

19   -- this is just simply a case between two parties, one of

20   which has a tax bill to pay.  There is no other parties

21   involved.  The second circuit, as you repeatedly made it

22   clear that in two-party disputes, the um, preferred forum is

23   the State forum.  The points that should be made are that

24   the plan which is described as a liquidating reorganization

25   contemplates payments by Mr. Fischman to Choshen's debtors.

1   Mr. Fischman should not be able to pay another party's

2   obligations such as $26,000 owed to the IRS in -- to the

3   prejudice of his own creditors.

4          The, um, the other point, final point that should

5   be made is that all of the assets listed in Mr. Fischman's

6   proof of claim are essentially non-existent.  So where's Mr.

7   Fischman going to get this money to fund this liquidating

8   11?

9          THE COURT:  Okay.

10         MS. TIRELLI:  Your Honor, if I can just address

11  some of that for the record.

12         Your Honor, the Choshen is personified not by Mr.

13  Fischman but by the 15 percent member and that's Lawrence

14  Katz.  There are assets that were discovered, there's

15  artwork in particular, I believe it's ten or twelve pieces

16  of art.  I did locate an appraiser.  I'm filing a motion

17  today to have that appraiser retained.  And from there, we

18  can liquidate the artwork to help pay back some of these

19  debts.  This is a liquidating Chapter 11, your Honor.  It's

20  not about a dispute.  It's about trying to get this company

21  wound up, closed down, all the assets sold and then the

22  money turned over to the creditors, whether it's the IRS or

23  it's Mr. Maidenbaum, whoever the legitimate creditors are,

24  we'd like to send the money over to those parties.  That is

25  the purpose of this bankruptcy, and I don't see how that is

1  in any way against Mr. Maidenbaum's best interest.

2            THE COURT:  Ms. Tirelli, what art do you have?

3            MS. TIRELLI:  I'm sorry?

4            THE COURT:  Tell me about the art.

5            MS. TIRELLI:  Your Honor, there's um -- I can

6  actually take some out of the office and show it to your

7  Honor.

8            THE COURT:  I don't need to see it.  I need to

9  know --

10            MS. TIRELLI:  Yes, your Honor.  I believe it's 10

11  to 12 pieces of um -- they're 18th Century -- I'm told, I'm

12  not an art expert by any means which is why we're retaining

13  an appraiser who is an expert in Jewish themed art.  It's

14  all Jewish themed.  But they're beautiful lithographs, your

15  Honor, that are all beautifully framed.  Um, and I --

16  they're I believe 17th and 18th Century lithographs.  There

17  is also sketches by a famous now Jewish artist who did most

18  of his work prior to World War II in Germany as I understand

19  it, and that artist's name is Kazmar (phonetical).  And so

20  the appraiser, when I spoke to her and I interviewed her

21  through Zoom, she told me that his stuff does actually sell

22  pretty well, and she said that while many of these

23  lithographs might be common, they're actually very

24  desirable.

25            So, I think that in all fairness, we should see

1  what the artwork is worth, what the valuation of is it

2  because I don't know if it's worth a thousand dollars the

3  collection, your Honor, I don't know if it's worth $10,000

4  in the collection.  Either way, your Honor, there are assets

5  here that can be liquidated.  We've said from the beginning,

6  we're trying to liquidate here and, you know, sold off and

7  just given to the creditors.  It's really as simple as that.

8  This is not a very complicated Chapter 11, and I don't want

9  to make it into something that it's not.

10            MR. BERRY:  Okay.

11            MS. LEONHARD:  Your Honor, may I be heard please?

12            THE COURT:  You preempted me.  I was about to say,

13  Ms. Leonhard.

14            MS. LEONHARD:  Thank you, your Honor, Alicia

15  Leonhard for the U.S. Trustee.  Your Honor, the U.S. Trustee

16  supports dismissal.  In fact, U.S. Trustee filed his own

17  motion which we adjourned as a courtesy to Ms. Tirelli.  But

18  a couple of things, your Honor.  Number one, the Debtors

19  haven't filed any operating reports since the petition,

20  okay.  Number two, that artwork is uninsured as far as we

21  know because the Debtor has provided no -- no evidence of

22  insurance of that artwork.  It's now in Ms. Tirelli's

23  office, um, and, you know, we just don't know, you know --

24  it's -- we're concerned about the, you know, protecting and

25  preserving this alleged, you know, these alleged valuable

1  artworks.  And so those two issues, you know, I think those

2  two also warrant dismissal.

3            MS. TIRELLI:  Your Honor, if I may.

4            THE COURT:  Let her finish.

5            MS. TIRELLI:  I'm sorry.  I thought she was

6  finished.  My apologies.

7            MS. LEONHARD:  Thank you, your Honor.

8            MS. TIRELLI:  My apologies, I certainly didn't

9  mean to cut Ms. Leonhard off in any way, shape or form.

10 Your Honor, those are arguments that were made in

11 Ms. Leonhard's motion which of course is not before the

12 Court today.  As far as the -- as the insurance is

13 concerned, your Honor, really--

14           THE COURT:  The motion to dismiss isn't before the

15 Court today and she just simply said that they have joined

16 that motion to dismiss.

17           MS. TIRELLI:  Yes, your Honor, but the additional

18 issues that are being brought to the Court today, number one

19 regarding insurance, I would just like to address that.  The

20 purpose of getting it appraised is that we know exactly how

21 much we need to insure it for.  I don't know if these are

22 worthless.  I don't know if they're worth something.  I have

23 no idea.  For safekeeping, they are in my office.  I'm in a

24 secure building, your Honor, it's a Ginsberg (phonetical)

25 building.  It's extremely secure, your Honor.

 1          THE COURT:  Insurance is not the point.  You're

 2   only bringing it up now and we do not have operating

 3   reports, and I know there are no operating reports.

 4          MS. TIRELLI:  But, your Honor, we have filed the

 5   operating reports.  If I can just confer with our legal --

 6   they have been filed this morning.

 7          THE COURT:  Oh, this morning, Ms. Tirelli.

 8          MS. TIRELLI:  Well, your Honor, the operating

 9   reports, the business is not operating.  This is a

10   liquidating, and the forms are filled out.  We did

11   provide -- they have been filed this morning, I just

12   confirmed.  Your Honor, it's not an ongoing business, it's a

13   liquidation.  So the operating reports, they are filed.  And

14   I've tried to get Ms. Leonhard more than once on the phone

15   and also by e-mail, and I have not gotten a response.  I

16   understand she's very busy, but I would like to have that

17   conversation with her and talk about the path forward for

18   this case.  And it is a liquidating 11.  Let's give it a

19   chance.

20          MR. BROWNSTEIN:  Your Honor --

21          THE COURT:  Mr. Brownstein, this is your motion to

22   dismiss.  I am only going with your motion to dismiss, not

23   Ms. Leonhard's, and I am ruling on that now. Do you wish to

24   add anything to your motion?

25          MR. BROWNSTEIN:  No, your Honor.

1          THE COURT:  Very good.  Mr. Maidenbaum -- anybody

2    else wish to add anything to Mr. Maidenbaum's motion to

3    dismiss?

4          MR. BERRY:  Yes.

5          THE COURT:  Mr. Berry, it's Mr. Maidenbaum's

6    motion to dismiss I am hearing.

7          MR. BERRY:  Yes, your Honor.  Mr. Maidenbaum's

8    motion to dismiss.  This artwork was disclosed more than two

9    months ago.  There's been plenty of time to get appraisals,

10   plenty of time to get insurance.  The operating reports that

11   were filed earlier today showed zero cash, and with respect

12   to the artwork, the values to be determined.  This is just a

13   waste of everybody's time.  It doesn't belong in Bankruptcy

14   Court.

15         THE COURT:  Very good.  Thank you.  Mr. Maidenbaum

16   moves to dismiss the Debtor's Chapter 11 case with prejudice

17   under 1112 (B)(1), (B)(4)(a),(B)(4)(m) and there is no

18   reasonable possibilities the Debtor can reorganize and

19   because the case was filed in bad faith.

20         Ms. Tirelli, one question I will ask you.  What

21   about a conversion to a 7?

22         MS. TIRELLI:  Well, your Honor, I don't know that

23   that will be out of the question but, um, at this point, my

24   understanding is that Mr. Fischman does want to -- does want

25   to contribute as much as ten percent to the creditors, you

 1  know, if we can liquidate this in an 11, and that would be

 2  the difference between a 11 versus a 7 where he would not be

 3  under an obligation to do that, and it would be strictly

 4  gratuitous.  And it's, something again, I wanted to speak to

 5  Ms. Leonhard about and Mr. Fischman's Counsel.

 6       Now, this morning obviously there was a bit of game

 7  changer here.  He's now an individual who's not in

 8  bankruptcy who very well can contribute to this plan.  You

 9  know, I think that that needs to be discussed with my client

10  before I can answer it, if we're ready for a 7 at this time.

11       THE COURT:  It's not that we can't do a 7.  I'm

12  ready to rule --

13       MS. TIRELLI:  Yes, your Honor.  Thank you.

14       THE COURT:  Because the case was filed in bad

15  faith and motivated solely to delay the State Court

16  post-judgment deposition of and documents produced by a

17  contempt proceeding against Aaron Fischman, these are

18  basically really intertwined.  On April the 25th, 2023, the

19  Nassau County Supreme Court Justice Bruce Cozzens filed an

20  order which held that unless Mr. Fischman appeared in the

21  Court for the deposition and document production required

22  under Mr. Maidenbaum's subpoena, Mr. Fischman would be

23  arrested and incarcerated.

24       Now, that's Mr. Fischman.  That's not this case.

25  But this case is the Cozzen case, and it seems to be that it

1  is a continuation of everything we just read in

2  Mr. Fischman's case.  I'm gonna take a quick break.

3              MS. TIRELLI:  Thank you, your Honor.

4              MR. BERRY:  Thank you, your Honor.

5              (Whereupon a short recess was taken.)

6              THE COURT:  Very good, I apologize.  I'm on mute.

7  No, I apologize.  I just needed to get my own bearings on

8  this because they were moving together, so let me begin

9  again.  I'm on the motion to dismiss.  Mr. Maidenbaum moves

10 to dismiss the Debtor's Chapter 11 case with prejudice, and

11 I need to give a little bit of a background to get to the

12 debtor and in this case because they are intertwined.  With

13 prejudice under 1112 (B)(1), (B)(4), (B)(A) and (B)(4)(M),

14 if there is no reasonable possibility that the Debtor can

15 reorganize, and because the case was filed in bad faith and

16 motivated solely to delay the State Court post-judgment

17 deposition of documents produced by and contempt proceeding

18 against Aaron Fischman.  Again, and I go -- and I'm

19 repeating myself, but I had to make it clear.  On October

20 the 25th, 2023, Nassau County Supreme Court Justice Bruce

21 Cozzens filed an order which held that unless Fischman

22 appeared in court for the deposition and document production

23 requests required under Mr. Maidenbaum's subpoena,

24 Mr. Fischman would be arrested and incarcerated.

25             As the order recounts, it has been almost seven

1  years since the judgment, based upon a confession of

2  judgment was entered in this action.  There has been

3  constant avoidance of providing financial documents and

4  failure to comply with court orders.  Though claiming not to

5  have funds, one million was paid to another creditor.

6  Mr. Cozzen's order continues.  The underlying subpoena was

7  served in June of 2017, almost six years ago, in spite of

8  the orders of Justice Murphy, the undersigned, there has

9  been no -- has been no compliance whatsoever.  There have

10 been ten motions related to the 2017 subpoenas, including

11 six by the Plaintiff for contempt of court, and four by the

12 Defendant seeking to quash or for a protective order.

13         The conduct on the part of the defendant, and I

14 quote Judge Cozzen "is making a mockery of this Court."  The

15 order further held that Fischman could not purge the

16 contempt and avoid arrest and incarceration by complying

17 with a subpoena-- could, excuse me, could purge the contempt

18 and avoid the arrest and incarceration by complying with

19 subpoena and appearing in court on May the 9th for his

20 deposition.

21         The first of these alleged bad faith filings was an

22 involuntary Chapter 11 case filed by the Debtor against his

23 CEO Mr. Fischman on May the 8th, 2023, one day before he was

24 ordered to appear in state court or faced arrest and

25 incarceration.  The case was filed by pro se Petitioner name

1  Aaron Berlin (phonetical) and dismissed for failure to serve

2  the summons July the 11th, 2023.  Ms. Tirelli appeared on

3  behalf of Mr. Fischman in that involuntary case.  Following

4  the dismissal, the in-court deposition of Mr. Fischman was

5  rescheduled for August the 14th, 2023.  Debtor then filed

6  this case on August the 2nd, 2023 by his attorney.

7        Mr. Fischman allegedly makes a clearly erroneous

8  arguments to the state court that the stay prevented him

9  from being deposed.  Mr. Fischman's case was -- Mr. Fischman

10 was severed from the case August the 4th, 2023.  He then

11 filed a pro se Chapter 13 on August the 10th, 2023, in order

12 to stay the state court proceeding, including his deposition

13 and document production.  That Chapter 13 case was filed as

14 a bare bone petition without schedules or a plan, despite

15 the fact that Mr. Fischman was ineligible to be a debtor

16 under Chapter 13, and as we know, there was a motion made to

17 convert that we have dealt with this morning.

18        Mr. Maidenbaum alleges that the Debtor cannot

19 reorganize.  Debtor owes Mr. Maidenbaum almost five million

20 and is being sued by the New York State Attorney General for

21 millions of dollars for losses suffered by investors.

22 Debtor has no assets and conducts no business.  The only

23 purported asset is its stock in Cardis that today we did

24 hear there were some possible artwork, but of even valued,

25 it would be de minimus as lithographs, even if we can get

1  the high end on it and the amount.

2      Mr. Maidenbaum holds at least -- I don't know that

3  to be true, we don't have an estimate, but it was

4  lithographs and -- of Ms. Tirelli's indicated that possible

5  value, but we don't know the answer to that.  Mr. Maidenbaum

6  holds judgments against Cardis for the same five million.

7  Additionally, the New York State Attorney General is suing

8  Cardis for losses of 72 million.

9      Debtor also has alleged it holds technology that it

10  can sell, but the State has already determined that to be a

11  lie.  In its Complaint, the Attorney General alleges that no

12  technology was ever developed.  Cardis has no contracts or

13  contracts that it represented to have to its investors.  And

14  its promise that an IPO was on the horizon were allegedly

15  just another strategy to induce investors to continue

16  pouring money into an enterprise that Defendants knew was

17  not available.

18      According to the Debtor's affidavit, Aaron Fischman

19  will be funding debtor's plan by paying as much as ten

20  percent to each valid creditor so long as the dissolution

21  remains in bankruptcy, a bankruptcy case under Chapter 11.

22  That's a quote.  Debtor fails to provide any proof that

23  Mr. Fischman has income.  He is in debt to Mr. Maidenbaum

24  for over four million and is being sued by the New York

25  State for even more.

1           The Debtor also swears in an affidavit that his

2   only assets are Cardis stock.  In his petition, it values

3   these assets between zero and 50,000 and estimates its

4   liabilities between one and ten million.  It is not clear

5   what value the stock has, but it is most likely valueless as

6   Cardis is also in debt to Maidenbaum and facing additional

7   litigation.  Section 1112 (B)(1) states that Court shall

8   convert a case under this chapter to a case under Chapter 7

9   or dismiss under this chapter, which ever is in the best

10  interests of the creditors and the estate for cause unless

11  the Court determines that the appointment of a Trustee or an

12  examiner is in the best interest of the creditor's estate.

13  Cause is defined as substantial or continuing loss to or

14  diminution of the estate, and the absence of a reasonable

15  likelihood of rehabilitation, and an inability to effectuate

16  substantial consummation of a confirmed plan.  That is

17  quoting 1112 (B)(4)(A) and (M).  While bad faith is not

18  enumerated as a cause in 1112 (B) courts have and I quote,

19  "Uniformly held that an implicit prerequisite to filing a

20  bankruptcy petition is good faith on the part of the Debtor,

21  the absence of which may constitute cause for dismissal."

22  That's In re Loco Realty 2009 Westlaw 283050 Southern

23  District of New York 2009.  And the Second Circuit Court

24  looks to the following factors to determine whether the

25  debtor has acted in bad faith:  The Debtor has only one

asset.  The Debtor has few unsecured creditors whose claims are small in relation to those of the secured creditor.  The Debtor has one asset.  The Debtor's one asset is the subject of a foreclosure action as a result of their arrearage or default on the debt.  The Debtor's financial condition is in essence a two-party dispute between the Debtor and secured creditors which can be resolved in the pending state foreclosure action.  The timing of the Debtor's filing, filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.  The Debtor has little or no cash flow.  The Debtor can't make current expenses, including the payment of personal property and real estate taxes, and the Debtor has no employees.  Again, Loco Realty, a Southern District of New York case citing In re CTC 9th Avenue Partners 113 F.3d, 1304, a Second Circuit 1997 opinion.

The Debtor meets almost every one of these factors demonstrating that this is a bad faith filing.  Debtor is in the process of winding down.  Debtor has no employees. Debtor has little or no cash flow.  Debtor cannot meet current expenses.  Debtor has only one asset, the Cardis stock which has minimal value in comparison to its debt. Debtor's one asset is the subject of collection litigation and other litigation.  Debtor's financial condition is in essence a two-party dispute which can be resolved in the

1   state court.  Debtor lists only eight unsecured creditors on

2   his petition, most of whom are part of this Cardis

3   litigation.  Mr. Maidenbaum and the New York State Attorney

4   General are by far the largest of these creditors.  The

5   timing of the filing evidences an intent to delay and

6   frustrate Mr. Maidenbaum, and is as clear that this is the

7   case and Mr. Fischman's case were filed as a part of a

8   scheme to prevent the collection activities of

9   Mr. Maidenbaum in State Court.

10           Debtor also lists every creditor as disputed in his

11   petition and lists Mr. Maidenbaum's debt as zero, despite

12   its two State Court judgments against the Debtor.  If debtor

13   wishes to dispute this debt, State Court is the more

14   appropriate form to do so.

15           Cause to dismiss can be found under 1112 (B)(4)(A)

16   and (M), as it does not appear the Debtor has any assets

17   with which it will be able to confirm a plan, and there is

18   not a reasonable likelihood of rehabilitation.

19           The Chapter 11 case is dismissed.  Mr. Berry,

20   submit an order.

21             MR. BERRY:  Thank you, your Honor.

22             THE COURT:  Very good.  Have a good Thanksgiving

23   everyone.

24             (Proceedings adjourned 10:33 a.m.)

25

1          C E R T I F I C A T I O N

2

3    I, Laurie A. Pellitteri, certify that the foregoing

4    transcript of proceedings is a true and accurate record of

5    the proceedings.

6

7    Signature: *Laurie A. Pellitteri*  (Electronically signed.)

8    AMERICAN LEGAL TRANSCRIPTION

9    11 Market Street, Suite 215

10   Poughkeepsie, New York 12601

11   Dated:  November 22, 2023

12

13

14

15

16

17

18

19

20

21

22

23

24

25